CARLOS MERINO, como sucesor de Rafael Seijo Casaldere, demandante y apelado, *v.* CITY OF NEW YORK FIRE INSURANCE COMPANY; THE AUTOMOBILE FIRE INSURANCE COMPANY; THE AMERICAN INSURANCE COMPANY y CAMDEN FIRE INSURANCE COMPANY, demandadas y apelantes.

Nos. 3565, 3566, 3567 y 3568.—*Vistos:* Diciembre 4, 1925.

*Resuelto:* Mayo 7, 1926.

1. SENTENCIA—RECONSIDERACIÓN *(Opening)* O ACTO DE DEJARLA SIN EFECTO—ERRORES EXCUSABLES DE LEY—ERRORES DE LEY COMETIDOS POR EL ABOGADO DEL QUE LA PIDE.—De acuerdo con el artículo 140 del Código de Enjuiciamiento Civil, una corte puede dejar sin efecto una sentencia por errores de ley cometidos por el abogado, dentro del plazo estatutorio, cuando las circunstancias son tales que debe tomarse esa medida en bien de la justicia.

2. SENTENCIA—RECONSIDERACIÓN *(Opening)* O ACTO DE DEJARLA SIN EFECTO—ERRORES EXCUSABLES DE LEY—SENTENCIA DICTADA POR DESISTIMIENTO.—El hecho de que la sentencia se haya dictado por desistimiento, no es un obstáculo infranqueable para dejarla sin efecto.

3. APELACIÓN Y ERROR—REVISIÓN—DISCRECIÓN DE LA CORTE INFERIOR—ACTO DE VACAR O DEJAR SIN EFECTO UNA SENTENCIA—SENTENCIA POR DESISTIMIENTO.—Examinada la petición y la prueba aportada se resolvió que hubo base para que la corte inferior ejercitara como ejercitó su poder discrecional para dejar sin efecto las sentencias de que se trata en estos casos.

4. DESISTIMIENTO Y "NON SUIT"—VOLUNTARIO—DOCTRINA DE RETRAXIT.—En los casos de auto se examina la doctrina de retraxit.

Resoluciones de *Pablo Berga,* J. (San Juan), dejando sin efecto las sentencias por desistimiento · previamente dictadas. *Confirmadas.*

*Jaime Sifre, Jr., Horacio Franceschi* y *Enrique Igaravídez,* abogados de las apelantes; *Antonsanti & La Costa,* abogados del apelado.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Estos casos fueron iniciados por Carlos Merino en cobro de pólizas de seguro de la goleta "María Magdalena," que se hundió el 29 de abril de 1921 en viaje hacia Sánchez, República Dominicana, y en todos ellos el demandante por medio de su abogado presentó mociones consignando y pidiendo lo que sigue: "Que el demandante desea desistir de esta acción en virtud del fallo recaído en el caso civil No. 675, titulado *Carlos Merino como Sucesor de Rafael Seijo Casaldere* v. *The Globe Fire Ins. Co.,* resuelto por el Tribunal de Distrito de San Juan, Primer Distrito, por lo cual respetuosamente, suplica a esta corte que dicte sentencia por desistimiento sin especial condenación de costas." Las sentencias así pedidas fueron dictadas y registradas el 27 de abril de 1923, en el caso contra *The City of New York Fire Insurance Co.;* en igual fecha en el caso contra *The Automobile Fire Insurance Co.;* en 8 de mayo, 1923, en el caso contra *The American Insurance Co.,* y en 28 de abril, 1923, en el caso contra *Camden Fire Insurance Co.*

Así las cosas, el demandante, por medio de nuevos abogados, presentó, el 6 de septiembre de 1923, mociones pidiendo a la corte que dejara sin efecto sus sentencias, concediendo al demandante una oportunidad para discutir su caso sobre los méritos.

El 7 de agosto de 1924 la corte de distrito estudiadas las mociones y la prueba presentada, y considerada la decisión de esta Corte Suprema en el caso de *Carlos Merino* v. *The Globe Fire Insurance Co.,* 33 D.P.R. 421, dejó sin efecto las sentencias. Y .contra esas resoluciones de la corte es que

se han interpuesto los presentes recursos que serán considerados en una sola opinión.

Las apelantes hicieron el siguiente señalamiento de errores:

"La Corte cometió error al declarar con lugar la moción solicitando se vacara la sentencia por desistimiento recaída en este caso y al reponer el mismo por las siguientes razones:—

"(a) Porque la inadvertencia e ignorancia de la ley por parte del abogado del demandante y a consecuencia de las cuales éste es perjudicado no es razón suficiente para que se abra el caso y se vaque la sentencia, de acuerdo con el artículo 140 del Código de Enjuiciamiento Civil de Puerto Rico.

"(b) Porque el desistimiento voluntario de un pleito por el demandante no puede ser rectificado ni anulado, alegándose como motivo para ello que dicho desistimiento se debió a inadvertencia, error, ignorancia o excusable negligencia de la Corte y de la parte contraria.

"(c) Porque dicha moción es insuficiente toda vez que en la misma no se alegan los hechos determinantes de la inadvertencia, error, sorpresa o excusable negligencia que son los fundamentos que pueden alegarse bajo el art. 140 para que la Corte pueda ejercitar su poder discrecional bajo dicho artículo.

"(d) Porque alegado como único fundamento de la moción para vacar que las partes, ni la Corte ni los abogados tuvieron en consideración que existía una cláusula escrita en la póliza, cuyo efecto era anular la cláusula impresa sobre la cual se basó la corte del Primer Distrito de San Juan para dictar sentencia declarando sin lugar la demanda en el caso de la Globe Rutgers, la prueba presentada para sostener tal fundamento no demuestra que tal haya sucedido.

"(e) Porque el demandante no alegó en su petición ni demostró por su prueba que antes de y cuando solicitó la desestimación de esta acción estuviera libre o exento de culpa, falta o inexcusable negligencia en relación con dicho desistimiento, y por tanto no puede acogerse a los preceptos del artículo 140 citado.

"II.—Que el apelante al dictarse sentencia por desistimiento consintió en que la misma se dictara sin especial condenación de costas, cargando la apelante con las que por su parte había incurrido, y que tal estado de hechos tiene el efecto de un retraxit y constituye un bar o defensa eficaz contra cualquier otra acción que se entable sobre el mismo asunto por el demandante, y que la corte al dictar

su resolución vacando esta sentencia y reponiendo el caso priva a dicha demandada de esta defensa eficaz, perjudicando irreparablemente los derechos de esta apelante.''

Para el debido estudio de los errores, precisa antes conocer los hechos. Como ya hemos dicho, todos estos pleitos y además el seguido contra *The Globe Fire Insurance Co.* se iniciaron en cobro de pólizas de seguro, sobre la misma embarcación, la goleta ''María Magdalena.'' En el último, o sea, *Merino* v. *The Globe,* se celebró la vista y se dictó sentencia en contra del demandante el 23 de marzo de 1923. En 5 de septiembre siguiente, se presentó una moción para que se dejara sin efecto la sentencia que fué declarada sin lugar por la corte el 3 de octubre del mismo año. Apeló el demandante y obtuvo que esta corte revocara la resolución (33 D.P.R. 421, *supra.*) Al final de su opinión esta corte, por medio del Juez Sr. Wolf, se expresó así:

''Debido al error de la corte en creerse sin facultades para conocer de la moción, debe revocarse la resolución apelada y devolverse el caso para ulteriores procedimientos no incompatibles con esta opinión. Cuando el caso sea devuelto la corte puede considerar los méritos de la moción y oir a las partes por *affidavit,* o de otro modo, para determinar si el demandante probó un caso de abandono excusable y si solicitó prontamente que se dejara sin efecto la sentencia después de descubrir el error.''

Al volver el caso a la corte de distrito, el demandante pidió permiso para enmendar su demanda que le fué concedido, solicitando también que se le permitiera jurar su petición acompañando el juramento y archivó los siguientes *affidavits:*

Gabriel Palerm, que dijo: ''Que es el apoderado de don Carlos Merino, el demandante en este caso.—Que después que se dictó la sentencia en este caso con fecha 23 de marzo de 1923, visitó a el abogado de dicho Carlos Merino don Carlos J. Torres, casi a diario por espacio de un mes y medio para informarse del recurso que podía establecerse en beneficio de los intereses de su poderdante Carlos Merino,

durante cuyo período de tiempo el licenciado Carlos Torres le informaba al dicente que estaba estudiando el asunto y que también estaba haciendo gestiones con la casa de Sobrinos de Ezquiaga para que hicieran el pago, puesto que el señor Mendía de dicha casa se encontraba dispuesto a ayudar a Merino a cobrar el importe de su póliza.—Que al cabo de un mes y medio o sea allá a fines del mes de mayo o a principios de junio el licenciado Torres informó al dicente que no se podía hacer más nada en el asunto porque no se probó en el juicio que Sobrinos de Ezquiaga eran los agentes de la compañía demandada.—Que en el mes de junio, entonces el dicente consultó con el licenciado Pedro Santana, Jr., abogado de esta capital, exponiéndole el caso, y este letrado le informó que habiéndose dictado una sentencia en el caso y la cual era firme por no haberse interpuesto recurso de apelación en su contra, y que ya no había más recurso en el caso.—Que a los pocos días y tan pronto pudo el dicente verse con el licenciado Salvador Suau que es un abogado de esta ciudad, consultó con este letrado a fines del mes de junio sobre el mismo asunto y dicho letrado allá a fines de julio le emitió su opinión, en el sentido que creía que ya no había recurso alguno.—Que tan pronto le indicó el licenciado Suau lo que antes se ha dicho, supo el dicente que el licenciado Frank Antonsanti se encontraba en San Juan, y quien en esos días había regresado de los Estados Unidos, y tan pronto tuvo conocimiento el dicente que había regresado dicho abogado, se apresuró a consultarle sobre el asunto, puesto que en años anteriores dicho abogado le había prestado servicios profesionales al dicente y le conocía personalmente.—Que dicho abogado Antonsanti le requirió al dicente para que le trajera todos los documentos de los abogados con quienes había consultado previamente y se los llevó al licenciado Antonsanti a mediados de agosto del 1923, y a fines de este mismo mes el dicente fué llamado por dicho abogado quien le informó que después de estudiar el asunto detenidamente, era de opinión que podía solicitarse

de la corte se dejara sin efecto la sentencia dictada, fundándose en ciertos errores cometidos, y que si la corte accedía a la moción, el demandante Merino tendría su derecho expedito para recobrar el importe de la póliza.—Que en seguida el dicente encargó al abogado Antonsanti para que entablara los recursos que él creía oportunos habiendo éste presentado en 5 de septiembre de 1923 la moción que dió origen a esta cuestión.—Y manifiesta el dicente que desde que se dictó la sentencia en este caso, o sea desde marzo 23, 1923, hasta el día 5 de septiembre del mismo año en que se radicó la moción solicitando se dejara sin efecto esa sentencia, el dicente fué diligente en solicitar la ayuda de los letrados nombrados anteriormente, y si antes no se presentó dicha moción fué debido a la opinión que le habían dado dichos letrados.—Que el dicente visitó en el día 23 de junio de 1924, el despacho del licenciado Suau para solicitar de éste una declaración jurada, no pudiéndola conseguir por el motivo de que hace más de un mes que dicho abogado se embarcó para España y no se encuentra en la actualidad en Puerto Rico.—Y además manifiesta el dicente que Carlos Merino se encuentra en la actualidad y se encontraba al tiempo de emitir su opinión el Tribunal Supremo, fuera de Puerto Rico y por ese motivo el dicente hace este juramento y no lo verifica en persona el propio Carlos Merino.''

Pedro Santana, Jr., abogado, que corrobora lo dicho por Palerm.

Y Frank Antonsanti, abogado, que también sostiene lo afirmado por Palerm.

En la petición, jurada finalmente, se consignan los siguientes hechos:

''Que allá por el día 10 de marzo de 1922 este peticionario por conducto de su abogado que entonces lo era el Lcdo. Carlos Torres, presentó a esta Corte una demanda en contra de la Globe Rutgers Insurance Company en una acción sobre cobro de póliza.

''Que en esta demanda entre otras alegaciones se exponía que allá

por el día 28 del mes de marzo de 1920, Rafael Seijo Casaldere era dueño de una goleta denominada 'María Magdalena.'

"Que la corporación demandada había asegurado dicha goleta por la cantidad de $2,500 y expidió la correspondiente póliza cubriendo la misma contra riesgos marítimos, etc. por un término comprendido entre mayo 12, del 1920, y mayo 12 de 1921, según puede verse de las cláusulas insertas en dicha póliza y que se hacía parte de esa demanda.

"Que en dicha demanda se seguía alegando que allá por el mes de enero de 1921 Rafael Seijo Casaldere cedió los derechos que tenía sobre la goleta 'María Magdalena,' a Carlos Merino o sea el demandante en esta acción, pasando por lo tanto éste a ser sucesor en la propiedad de la referida goleta así como en los derechos sobre la póliza expedida a favor de aquél y que la demandada fué notificada de ese cambio o traspaso en primero de abril de 1921, y que allá por el día 29 de abril de 1921, la goleta 'María Magdalena' ya siendo propiedad del demandante, Carlos Merino, salió del puerto de Mayagüez con destino a la República Dominicana habiéndose dicha goleta hundido en alta mar accidentalmente, sin culpa del capitán ni de la tripulación ni por negligencia o falta de experiencia de los que la manejaban.

"Que el demandante presentó su reclamación en debida forma a la compañía aseguradora o sea la demandada en este caso por conducto de sus agentes en esta ciudad Sres. Sobrinos de Ezquiaga y ésta se negó a pagar el importe de dicha póliza.

"A esta demanda la compañía aseguradora presentó su contestación y entre las varias defensas que interpuso para justificarse en no satisfacer el importe de la póliza había una que decía en síntesis:—

"'Que la póliza era nula porque cuando ocurrió el hundimiento de la goleta la citada embarcación aún estaba asegurada a favor de Rafael Seijo Casaldere, y no de ninguna otra persona y que si éste cedió y traspasó dicha póliza a Carlos Merino lo hizo sin el consentimiento de la demandada y en contra de los términos expresos de la citada póliza que determinaba que éste no podía vender, ceder o traspasar la póliza sin el consentimiento por escrito, de la demandada y que ese consentimiento nunca fué dado.'

"Este peticionario alega que una de las condiciones generales impresas adheridas a la póliza a las que se refiere la defensa anteriormente transcrita dice en efecto que la póliza será nula si se traspasa sin el consentimiento por escrito de la compañía, siendo

dicha cláusula la que dió lugar a la sentencia recaída y a que nos referimos más adelante.

"Y alega este peticionario que en su oportunidad se celebró la vista de este caso ante el Hon. Juez López Acosta y que después de oir a las partes dicho Juez en marzo 23, 1923, dictó una sentencia cuya parte dispositiva es como sigue:

" 'La parte demandada en este caso plantea la cuestión siguiente:

" 'Que de acuerdo con el contrato de seguro no existe causa de acción a favor del demandante Carlos Merino, toda vez que la póliza de seguro está a nombre de otra persona, y de acuerdo con el contenido de la misma cualquiera transferencia o traspaso hecho sin el consentimiento de la aseguradora anula el contrato de seguro.

" 'Una de las condiciones de esta póliza de seguro es la siguiente:—

" 'Se conviene además que este seguro será nulo en caso que esta póliza o el objeto asegurado por la misma sea vendido, asignado, traspasado o dado en prenda sin el previo consentimiento por escrito de los aseguradores.

" 'No hay duda que este contrato era obligatorio por las partes, y su no cumplimiento traería por consecuencia su nulidad. El demandante Carlos Merino, aún suponiendo que dicho traspaso fuera legal, nunca hubiera podido adquirir la propiedad de dicha póliza hasta que no fuese debidamente autorizada o consentida por la compañía aseguradora.

" 'De la prueba presentada aparece que tal consentimiento no existió nunca, y por consiguiente nunca existió una válida transferencia de la propiedad o venta de la goleta con respecto a la póliza de seguro, y por consiguiente dicho demandante carece de causa de acción para reclamar el montante de la misma.

" 'Por estas razones entiende la Corte, que no habiéndose probado una causa de acción, procede desestimar como desestima la demanda interpuesta, imponiéndole al demandante las costas, desembolsos y honorarios de abogado.'

"Como se ve de una manera clara y terminante, la Corte al resolver este pleito sólo tuvo en cuenta para ello la defensa promovida por la demandada sobre el hecho único de que habiéndose transferido la póliza sin el consentimiento por escrito de la compañía el demandante Carlos Merino carecía de causa de acción a su favor para reclamar el montante de la misma.

"Y alega este peticionario que según se desprende de las alegaciones y del récord taquigráfico, cuyos documentos se hacen formar parte de esta moción, ni las partes, ni sus abogados, ni aún la misma

Corte tuvieron en cuenta que la póliza en sus CLÁUSULAS ESCRITAS en verdad no aseguraba a Rafael Seijo Casaldere individualmente, sino que en realidad se verificaba el seguro por cuenta de quien corresponda—*'for account of whom it may concern.'*

"Y sigue alegando este peticionario que como cuestión de derecho y de acuerdo con las cláusulas de la misma póliza que se acompaña, dicho Rafael Seijo Casaldere, no estaba obligado en forma alguna dar aviso de la transferencia de la póliza o de la goleta, ni solicitar permiso de la compañía aseguradora para traspasar dicha póliza o el interés que en ella pudiera tener porque de la misma póliza se desprende que tal consentimiento no era necesario toda vez que la misma póliza ya preveía estas cláusulas especiales que el aseguro se verificaba no sólo a favor de Rafael Seijo Casaldere sino por cuenta de quien corresponda o sea a favor de sus sucesores en interés, pues es elemental que existiendo en un mismo documento cláusulas contradictorias siendo unas impresas y otras escritas el significado y fuerza y sentido de las escritas que son especiales siempre se imponen a las cláusulas impresas, que se consideran las generales.

"Y sigue alegando el peticionario que por un error de apreciación este peticionario entonces demandante, dejó de solicitar un nuevo juicio dentro del término legal y así mismo permitió transcurrir el tiempo legal para presentar el escrito de apelación contra esa sentencia sin haber ejercitado ese derecho y por consiguiente hoy carece este peticionario de todo recurso legal contra esta sentencia, exceptuando el remedio contenido en el artículo 140 del Código de Enjuiciamiento Civil y este peticionario manifiesta que si esta Hon. Corte reconsiderase la sentencia dictada en esta acción o en cualquier otra forma eximiera a este demandante de los perjuicios resultantes de dicha sentencia, reconsiderando, revisando o anulando la misma y se le permitiese presentar su caso nuevamente ante la Corte de una manera más concreta y de acuerdo con la realidad de los hechos y demostrar que no era un requisito obtener el permiso de la compañía para traspasar la póliza, se cumplirían los fines de la justicia y así se repararía el agravio irreparable que se ha cometido contra este peticionario.

"Por lo tanto el demandante suplica a la Corte que de acuerdo con lo estatuído en el artículo 140 del Código de Enjuiciamiento Civil y usando de su discreción absoluta y en bien de la justicia, se sirva conceder a esta parte agraviada, el único remedio de que puede valerse, o sea, dejar sin efecto la sentencia dictada por esta Corte a que venimos refiriéndonos bien reconsiderando, revisando o

anulando, y así eximir a este peticionario de los resultados de la misma, y en su consecuencia concederle una oportunidad mediante la revisión o reconsideración del caso para que este peticionario pueda demostrar que la compañía demandada está legalmente obligada a satisfacer los $2,500.00 importe de la póliza.''

Lo expuesto anteriormente consta de una copia de los autos del caso de *Merino* v. *The Globe* presentada como prueba en cada uno de estos pleitos. · Con excepción de que en estos casos la sentencia se dictó por desistimiento, los hechos en que se basan los peticionarios para pedir que se dejen sin efecto dichas sentencias, son los mismos que en el repetido caso de *Merino* v. *The Globe*.

Procederemos ahora al examen de los errores señalados. El primero está dividido en cinco partes.

[1] (*a*) Sostienen las apelantes que siendo el fundamento único alegado para dejar sin efecto las sentencias, el error de apreciación sobre el alcance de una cláusula de los contratos en que las acciones se basaron, se trata de un error de ley imputable al abogado del demandante, que, de acuerdo con la jurisprudencia, no es suficiente para dejar sin efecto un fallo.

Citan los apelantes numerosos casos que sostienen su contención, pero nosotros creemos que en Puerto Rico existe una ley tan amplia sobre la materia—el artículo 140 del Código de Enjuiciamiento Civil—que es permisible dejar sin efecto una sentencia por errores de ley cometidos por el abogado, dentro del plazo fijado por el estatuto, cuando las circunstancias son tales que debe tomarse esa medida en bien de la justicia. Esta conclusión está sostenida ademas por la jurisprudencia de California donde existe un precepto similar al nuestro. Nos limitaremos a citar un caso de la Corte Suprema de dicho Estado en el que se resolvió lo que sigue:

''La exención por el fundamento de error, al amparo del artículo 473 del Código de Enjuiciamiento Civil, no se limita a errores de hecho, ya que dicho artículo es suficientemente amplio para justifi-

car la acción de la corte al eximir a una parte de los efectos de un error de derecho cometido por su abogado, cuando por descansar en él dicha parte queda impedida de hacer defensa alguna.'' *Douglass* v. *Todd,* 96 Cal. 655.

[2] (*b*) Si es posible—y acabamos de ver que lo es— dejar sin efecto una sentencia por errores excusables de ley, no importa que la sentencia se haya dictado por desistimiento.   Debe tratarse en verdad de un caso muy meritorio, pero no es el desistimiento un obstáculo infranqueable.

[3] (*c*), (*d*) y (*e*) Los restantes apartados del error primero pueden estudiarse conjuntamente.  A nuestro juicio la petición en relación con la prueba presentada demuestra que la corte de distrito tuvo base para ejercitar y ejercitó debidamente su poder discrecional para dejar como dejó sin efecto las sentencias de desistimiento.

Volviendo al caso de *Douglass* v. *Todd,* 96 Cal. 655, 658, encontramos en el curso de la opinión, precediendo precisamente al párrafo que dejamos citado, las siguientes consideraciones que parece oportuno transcribir:

''La ignorancia es amenudo el resultado de la negligencia, aunque no siempre puede atribuirse a esa causa.

''El demandado no fué culpable de negligencia alguna.  Si hubiera descansado en su propio criterio respecto a la ley aplicable a los hechos de su caso, ello pudiera considerarse como negligencia. Pero él recurrió a un abogado en ejercicio, y tenía derecho a suponer que éste era competente, y estaba justificado para actuar de acuerdo con su consejo.'' *Douglass* v. *Todd, supra,* 658.

No hay el más leve indicio de que la cláusula de la póliza que contiene las palabras *''for account of whom it may concern''* y que presenta el problema jurídico a resolver bajo un aspecto enteramente distinto, fuera invocada por el abogado del demandante, ni menos por el de la demandada, ni tenida en consideración por la corte sentenciadora.  La demandada por el contrario invocó con éxito otra cláusula que, al parecer, no tenía validez, dado el hecho de haberse consignado por ella misma en la póliza las indicadas pala-

bras *"for account of whom it may concern."* Creemos que
aunque pudo presentarse prueba más robusta y directa so-
bre el particular, la aportada es bastante.

No hubo negligencia por parte del demandante. Hizo
cuanto pudo y tuvo la fortuna de encontrar al fin la ayuda
legal necesaria. Es un caso meritorio que pone de mani-
fiesto la sabiduría del legislador al decretar el artículo 140
del Código de Enjuiciamiento Civil. Unos días más y unas
sentencias dictadas sobre un contrato habiéndose por inad-
vertencia dejado de considerar una de sus cláusulas real-
mente esenciales, hubieran quedado en todo su vigor no
obstante ser, quizá, enteramente injustas.

[4] El segundo error levanta la cuestión de la exis-
tencia de un *retraxit.* Sin que se entienda que resolvemos
que la regla es aplicable en Puerto Rico,—cuestión que no
ha sido discutida por las partes—, la estudiaremos tal como
ha sido levantada por las apelantes y discutida por el ape-
lado. Examinemos la jurisprudencia.

Citando a 3 Blackstone's Commentaries 296, la Corte
Suprema de California, en el caso de *Westbay* v. *Gray,* 116
Cal. 660, 666, dijo:

"En el derecho común ocurría un *retraxit* cuando un deman-
dante comparecía ante la corte en persona y voluntariamente renun-
ciaba a su pleito o causa de acción, y cuando esto se hacía y se dic-
taba sentencia a favor del demandado, la causa de acción del de-
mandante desaparecía para siempre."

Es cierto que la propia Corte Suprema de California en
el caso de *Merritt* v. *Campbell,* 47 Cal. 542-43, resolvió que:

"Una sentencia de desistimiento dictada a solicitud de cualquiera
de las partes con el consentimiento escrito de la otra, equivale a una
renuncia abierta y voluntaria de la demanda del actor, lo cual es
igual a un retraxit."

Y es cierto también que en este caso se solicitó y obtuvo
el desistimiento sin especial condenación de costas, pronun-
ciamiento que equivale a decir que cada parte pagará sus

costas, y que al pie de las peticiones de desistimiento aparece lo que sigue: "la demandada consiente a que se dicte sentencia en la forma que se solicita," pero es necesario reconocer que hay diferencia en los hechos.

En el caso de *Merritt* v. *Campbell, supra,* para llegar a la conclusión citada, la corte razona así:

"El estatuto (Ley de Práctica, artículo 148) provee tanto para una sentencia de nonsuit como para una sentencia de desistimiento y por el inciso segundo se dispone que puede dictarse una sentencia de desistimiento a instancia de cualquiera de las partes con el consentimiento escrito de la otra. Somos de opinión que tal desistimiento, obtenido mediante dicho consentimiento, equivale a una renuncia abierta y voluntaria de un litigio pendiente, lo cual debe considerarse como un retraxit. Y no vacilamos en dar esta interpretación al estatuto toda vez que en la práctica en este estado, general y quizá universalmente, se ha considerado que es la intención de las partes, al convenir en un desistimiento, poner fin a la controversia.

"En el caso de Bank of Commonwealth v. Hopkins, 2 Dana, 395, la primera acción establecida fué "desistida por convenio" por la sentencia de la corte. Presentada una segunda demanda basada en la misma causa de acción, el demandado invocó dicha sentencia como defensa. En la opinión de la corte sosteniendo tal defensa, el Juez Presidente Sr. Robertson se expresa como sigue: 'Esta Corte ha resuelto frecuentemente que la deducción legal que ha de hacerse de una sentencia teniendo por desistido un pleito por "convenio" es que las partes, por su acuerdo, han transado la materia objeto de la controversia; y el efecto legal de tal sentencia es, por consiguiente, el de un impedimento a cualquier acción subsiguiente entre las mismas partes y por la misma causa de acción así transada por las partes y envuelta en la sentencia allí dictada a su instancia y como resultado de su convenio.'

"En el presente caso no sólo hubo un mutuo convenio de que la acción fuera declarada desistida por la sentencia de la corte, dictada por razón de dicho convenio, sino que el demandado, por los términos del convenio de desistimiento, fué condenado a pagar las costas, que de no haber existido el convenio y la sentencia que le dió efecto él no estaba obligado a pagar y pudo, de lo contrario haber recobrado del demandante. El había pagado dichas costas antes de comenzarse la presente acción, y en cuanto a ellas puede

decirse que el demandante obtuvo sentencia contra el demandado en dicho pleito. No queremos se entienda que estamos resolviendo que un mero desistimiento de una acción por el demandante por ministerio de la ley y sin que él convenga en tal desistimiento deba considerarse como un impedimento a entablarla de nuevo, ni tampoco que una sentencia de *nonsuit,* aún dictada por consentimiento, tiene igual efecto, sino sólo que una sentencia de desistimiento basada en y dictada de conformidad con el convenio de las partes, debe considerarse, a falta de alguna expresión en contrario contenida en el convenio e incluída en la sentencia misma, como equivalente a una transacción de los méritos de la controversia hecha por las partes mediante la sentencia de la corte, bastante para constituir una defensa contra otra acción subsiguientemente entablada sobre la misma causa de acción.'' Páginas 546–47.

Y en este caso nada revela que existiera un acuerdo o transacción entre las partes sobre la substancia del asunto. Sin estar convencida como lo revelaron sus actos personales posteriores, la parte, por su abogado, acudió a la corte y pidió el desistimiento ¿basada en qué? Unicamente en el fallo rendido en el pleito que siguió contra *The Globe,* bajo la impresión errónea que se ha explicado. La misma base falsa que sirvió de fundamento para dictar la sentencia en el caso de *The Globe,* se extendió a estos otros casos. Y al desaparcer dicha base también su efecto debe extenderse a estos casos.

Tampoco son iguales los procedimientos, las situaciones jurídicas en uno y otro caso. En el de California se comenzó por el demandante una nueva acción no obstante su desistimiento previo, y el desistimiento fué alegado como un impedimento. Y aquí se pide a la corte que haciendo uso de las facultades que la ley le concede, exonere al demandante de los efectos de la sentencia de desistimiento para poder entonces plantear su caso de nuevo ante el tribunal.

No nos detendremos a examinar si se demostró o nó la existencia de una buena causa de acción. Tal cuestión se estudia en el recurso No. 3785, *Merino* v. *The Globe R. F. Ins. Co.,* decidido el 29 de abril de 1926, 35 D.P.R. 397.

Sólo deseamos consignar con respecto al hecho de la existencia de un convenio sobre costas, que si el convenio fué cumplido, debe subsistir, si nó, será una circunstancia a considerar en su día por la corte para el ejercicio de su discreción.

*Deben confirmarse las resoluciones apeladas.*

El Juez Asociado Sr. Wolf disintió.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. WOLF.

Como aparece suficientemente de la opinión de la mayoría, la sentencia original contra el demandante en este caso fué dictada por su propia solicitud y con su consentimiento; se le eximió del pago de las costas y la demandada pagó sus costas. Este fué un desistimiento voluntario del actor ·(*retraxit*) y puso término al litigio. Nuestro Código de Enjuiciamiento Civil ha sido tomado de California y el principio de retraxit está reconocido allí bajo el Código. *Stoutenborough* v. *Bd. Education,* 104 Cal. 664; *Merritt* v. *Campbell,* 47 Cal. 542; *Crossman* v. *Davis,* 79 Cal. 603; *Hibernia Saving, etc., Soc.* v. *Portener,* 139 Cal. 93.

Independientemente del nombre con que se le llame, cuando una persona comparece ante una corte y solemnemente y sin reserva renuncia a cualquier causa de acción contra un demandado, esto es mejor que una exoneración consignada en documento (*release under seal*). Es una declaración solemne por parte del demandante de que el demandado ha quedado exento para siempre. Menos en un claro caso de engaño o algo semejante, que nadie pretende que existió aquí, él está obligado por su acto que constituye un completo impedimento (*estoppel*). *Interest reipublicae est sit finis litum.*

El artículo 140 del Código de Enjuiciamiento Civil es enteramente inaplicable a tal situación. Dicho artículo prescribe que una persona podrá ser exenta de los efectos de una sentencia, orden u otro procedimiento "que se hubiese dictado contra ella, por causa de equivocación, inadvertencia,

sorpresa o excusable negligencia.'' El procedimiento fué iniciado por el demandante que desistió del mismo. Por tanto, no hubo ningún procedimiento seguido contra él, ni siquiera una sentencia por costas. Todo lo que existió fué su propia actuación, puesta voluntariamente en acción por él. No hubo inadvertencia, sorpresa o excusable negligencia. Todo fué el acto deliberado del demandante.

La opinión de la mayoría sólo trata de distinguir esta acción de un caso de *retraxit* diciendo que las cortes allí asumen la existencia de una transacción, y aquí no hubo ninguna. La presunción de una transacción no quedó destruída meramente por tratar el demandante de dejar sin efecto la sentencia. No hubo ninguna otra prueba para rebatir la presunción.

A mayor abundamiento, los autos muestran que el demandante por lo menos en dos de los pleitos fué relevado del pago de las costas; no se le impusieron honorarios de abogado que hubieran sido considerables aquí en Puerto Rico. Hubó una clara transacción de estos derechos por la demandada.

Sin embargo, personalmente no confiaría en la presunción de una transacción, pero como en una carta de pago en documento, cualquiera que fuere el motivo, la sentencia evidenció el deseo de las partes de poner término a toda reclamación del demandante y a toda obligación por parte de la demandada.

Me siento, por lo tanto, obligado a disentir.