Luis Antonio Albizu, demandante y apelado, *v.* The Royal Bank of Canada, demandado y apelante.

No. 6114.—*Sometido:* Junio 8, 1933. *Resuelto:* Abril 11, 1934.

*A. S. Poventud,* abogado del apelante; *F. B. Fornaris* y *M. León Parra,* abogados del apelado.

El Juez Asociado Señor Córdova Dávila, emitió la opinión del tribunal.

Luis Antonio Albizu, empleado que fué del Royal Bank of Canada desde el primero de abril de 1927 hasta el 15 de mayo de 1930, con un sueldo anual de $4,000, reclama en esta acción el pago de la suma de $493.33 que le fué descontada indebidamente de su sueldo. Se alega en la demanda que la corporación demandada, mucho tiempo antes de que el demandante fuese su empleado, tenía establecido, y continúa teniendo en la actualidad, un fondo denominado "officers' pension fund", con un reglamento regulando el funcionamiento y administración del mismo, el cual es engrosado con el descuento del 4 por ciento anual que hacía y continúa haciendo la demanda al sueldo que paga a cada uno de sus empleados. El Sr. Albizu, dentro del tiempo que estuvo empleado, satisfizo al fondo de pensiones la referida cuota del

4 por ciento, de acuerdo con las disposiciones del reglamento, que el demandante aceptó con pleno conocimiento de las mismas.

Se alega además que según reza el reglamento aludido, el fondo de pensiones tiene por objeto proveer pensiones para los oficiales y empleados del banco, sus viudas e hijos, de acuerdo con las reglas concernientes a tal fondo, debiendo entenderse de manera bien clara que las reglas del mismo no confieren ni invisten de derecho alguno a ningún oficial o empleado, que ningún contrato expreso o implícito se entenderá que nace del mismo, y que cada pensión será concedida a discreción del "Officers' Pension Fund" y por el tiempo que éste quisiere.

La demandada en su contestación alega, entre otras cosas, que entre los empleados y funcionarios del Banco demandado hay y existía en las fechas a que se refiere la demanda, y con anterioridad a las mismas, una asociación cooperativa denominada "Officers' Pension Fund" para protección mutua entre los oficiales y demás empleados de dicho Banco, con su reglamento regulando el funcionamiento y administración de la misma, cuyos fondos son engrosados por una contribución o pago anual espontáneo y voluntario que hace cada asociado de una suma o cantidad de dinero equivalente al 4 por ciento de la cantidad que percibe como salario anualmente, y que el demandante Sr. Albizu, al ocupar su puesto como *manager* del Banco demandado en Ponce, voluntariamente se asoció a dicho "Officers' Pension Fund", conociendo de antemano su funcionamiento y reglamento.

Se alega, además, especialmente, en la contestación, que existe un defecto de partes demandadas y se establecen las defensas especiales de que el demandante está impedido (*estopped*) de recabar la totalidad de las cantidades que satisfizo voluntariamente y que entre las mismas partes, por la misma reclamación y bajo hechos idénticos a los de la presente acción, se radicó en la Corte Municipal de Ponce una demanda que fué voluntariamente desistida por el deman-

dante cuando el caso había sido señalado para verse en juicio *de novo* ante la Corte de Distrito del Distrito Judicial de Ponce.

La corte inferior declaró nula la retención del 4 por ciento del sueldo del demandante, por ser contraria a lo dispuesto por la ley, y dictó sentencia condenando a la corporación demandada a pagar al demandante la suma total retenida de $493.33, con las costas y gastos, excluyendo honorarios de abogado.

Arguye en primer término la corporación apelante que la corte inferior erró al no declarar que existe defecto de partes demandadas en este caso.

Alega la demandada:

"... que entre los empleados de dicho Banco y oficiales del mismo, hay y existe una asociación formada por dichos oficiales y empleados, denominada *Officers' Pension Fund*, asociación que tiene funciones en virtud de su propio reglamento, y cuyos fondos son regulados y controlados por dos fideicomisarios o *trustees*, quienes desempeñan los cargos de Presidente y *General Manager* de la corporación demandada; que el demandante, de acuerdo con el reglamento, que conocía y conoce, pagaba como miembro del fondo de pensiones su cuota anual voluntariamente y sin protesta alguna, cuyo importe era igual o equivalente al 4% de su compensación anualmente obtenida como *Manager* u oficial de dicho Banco; que el demandante no ha requerido de pago al fondo de pensiones ni ha demandado ni ha hecho parte en esta acción a la referida asociación ni al Presidente y *General Manager* del Royal Bank of Canada como *trustees* o fideicomisarios de la misma, quienes son los que para beneficio mutuo de los asociados del indicado *Officers' Pension Fund* reciben y disponen del dinero recaudado entre sus miembros."

Basada en estos hechos entiende la corporación apelante que existe un defecto de partes demandadas indispensables para la resolución del presente caso.

Hemos examinado detenidamente el reglamento de este fondo de pensiones del Royal Bank of Canada y entendemos que no se trata de una asociación independiente, sino de un fondo que se paga a dos fideicomisarios o *trustees* que son

el presidente del banco y su administrador, los cuales están sujetos a las órdenes y bajo la autoridad del Banco a través de su junta de directores, que es la autoridad suprema, según se desprende del reglamento en sus artículos 4, 5, 10, 13, 14, 16, 17, 20, 21, 22, 23 y 25. El demandante produjo prueba documental creditiva de que en la Secretaría de Puerto Rico no existe ninguna corporación o asociación con el nombre de ''Officers' Pension Fund of the Royal Bank of Canada'' u ''Officers' Trust Fund of the Royal Bank of Canada''. A nuestro juicio no existe el defecto de partes demandadas señalado por la corporación apelante. Este fondo de pensiones no es otra cosa que una dependencia bajo el dominio del Banco, que es la parte realmente interesada.

El segundo error atribuído a la corte inferior consiste en haberse negado a aplicar a este caso la doctrina de *retraxit*. La corporación apelante nos dice en su alegato que el demandante, allá por el día 29 de octubre de 1931, radicó en la Corte Municipal de Ponce un caso idéntico al que ahora nos ocupa, y que este caso fué desistido ante la Corte de Distrito en apelación, habiéndose ordenado el sobreseimiento y archivo del mismo como asunto definitivamente terminado. Se ofrece como prueba la sentencia de sobreseimiento, sin presentarse evidencia alguna acerca de las cuestiones en controversia. Esta sentencia demuestra que anteriormente se ejercitó una acción en cobro de dinero entre las mismas partes, pero nada más. La información que tenemos sobre la acción anterior nos la ofrece el mismo demandante, quien al exponer sintéticamente su caso a preguntas del juez, reconoció que esta misma acción fué entablada de acuerdo con la ley de salarios de 1919 (No. 91 de 1917 (3) pág. 11), que fué declarada nula por la Corte de Circuito de Boston. En vista del fallo de la Corte de Circuito, el demandante solicitó el desistimiento, reservándose el derecho de establecer una acción consonante con las pretensiones de su demanda. La corporación apelante entiende que se trata de un fallo definitivo que impide a la parte establecer nuevamente la ac-

ción, atribuyéndole a dicho fallo el carácter de cosa juzgada. Es evidente que el caso anterior no fué resuelto en sus méritos. El demandante, en vista de que la ley que servía de base a su acción había sido declarada nula, y creyendo, según explica en su alegato, que no podía cambiar la teoría de su caso, desistió del mismo, reservándose el derecho de establecer cualquier acción consonante con las pretensiones de su demanda. El hecho de que la corte ordenara el archivo y sobreseimiento del caso como asunto definitivamente terminado no puede privar al demandante del derecho de promover una nueva acción. La corte declaró definitivamente terminado el caso desistido por el demandante y no el derecho que éste pudiese tener para solicitar en una acción posterior el cobro de la suma entonces reclamada.

La doctrina de *retraxit* tiene su origen en el derecho común y no hay razón alguna para implantarla en Puerto Rico, sobre todo cuando ha sido declarada anticuada y desconocida dentro de la práctica moderna por algunos tribunales. Esta Corte, en el caso de *Merino* v. *City of N. Y. Fire Ins. Co.*, 35 D.P.R. 462, estudia la cuestión, haciendo constar expresamente que lo hace sin resolver que la regla es aplicable a Puerto Rico. Se cita en esta decisión el caso de *Merritt* v. *Campbell*, 47 Cal. 542. Vamos a permitirnos copiar lo que dice la misma corte de California en el caso de *Pyle* v. *Pierce*, 55 Pac. 142, donde se distingue y prácticamente se desautoriza el caso de *Merritt* v. *Campbell*, supra.

"La parte demandada alegó el impedimento de una sentencia anterior, basada en los siguientes hechos: La demandante radicó su demanda y el demandado contestó. Llegado el día del juicio el letrado de la demandante no compareció. Entonces el demandado contestó: 'Estoy listo' y presentó una moción para que se desestimara el recurso debido a la no comparecencia de la demandante. En este momento compareció el letrado de la demandante y se negó a proseguir la acción. La corte entonces ordenó la desestimación del procedimiento por falta de instancia y dictó sentencia en favor del demandado por sus costas. Posteriormente se presentó una nueva demanda sobre la misma causa de acción y el demandado alegó en su

contestación que la sentencia anterior impedía la prosecución del presente recurso. El artículo 581 del Código de Enjuiciamiento Civil provee que una acción puede ser desestimada o dictarse una sentencia de *nonsuit* en los siguientes casos: ' (3) por la corte, cuando el demandante deje de comparecer en el juicio, y compareciendo el demandado, pida que se declare a aquél desistido.' El artículo siguiente dispone: 'En todos los casos, fuera de los mencionados en el precedente artículo, deberá dictarse sentencia sobre los méritos.' En este caso puede decirse con razón que el demandante no compareció al ser llamado el caso para juicio, y bajo la autoridad de este artículo la corte estuvo justificada en desestimar la acción. No estamos inclinados a extender la doctrina de *retraxit,* tal y como fué reconocida en el caso de Merritt v. Campbell, 47 Cal. 543, y ese caso es esencialmente distinto en sus hechos del presente. Cuando la causa no ha sido fallada en sus méritos, sólo en casos excepcionales este tribunal resolverá que una sentencia desestimando la acción equivale a una sentencia de *res adjudicata* sobre los hechos. No hay razonamiento en la lógica que justifique semejante regla. Nada ha sido objeto de litigio, y no puede invocarse principio de impedimento (*estoppel*) alguno. Si el demandante hubiese continuado el juicio hasta que se presentara el *nonsuit* basado en la debilidad de su prueba, tal sentencia de *nonsuit* no hubiera constituído un obstáculo para la iniciación del presente pleito. ¡Con cuánto menor motivo debió declararse la existencia de un impedimento bajo las circunstancias concurrentes! No encontramos que en este estado haya autoridades directas sobre la cuestión, pero en el caso de Laird v. Morris (Nev.) 42 Pac. 11, el punto se presentó directamente bajo un estatuto similar, y luego de una consideración cuidadosa se resolvió que tal sentencia no era un impedimento.''

Un *retraxit* es una renuncia abierta y voluntaria, llevada a cabo de una manera formal y definitiva, en corte abierta, por el demandante en persona y no por su abogado, a menos que éste haya sido expresamente autorizado para hacerlo por el propio demandante. En el caso de *Walker* v. *St. Paul City Ry. Co.,* 53 N. W. 1068, la Corte Suprema de Minnesota dice que un *retraxit,* en el derecho común, ''es una renuncia abierta y voluntaria, en corte abierta, por parte del demandante, de su demanda o causa de acción, y que al ser registrada la sentencia por el demandado el derecho de acción del demandante

quedaba para siempre destruído." Añade la referida corte que esta doctrina ha sido prácticamente abandonada en Inglaterra y que nunca fué reconocïda en el estado de Minnesota o en su territorio.

El presente no es un caso de *retraxit,* sino de desistimiento voluntario, solicitado por los abogados del demandante, quienes, en su nombre, se reservaron el derecho de establecer cualquier acción consonante con las pretensiones de su demanda. Es evidente que el sobreseimiento dictado por la corte no constituye una decisión en los méritos del caso y que por lo tanto no puede ser un obstáculo al establecimiento de una nueva acción.

Entendemos que el tribunal *a quo* no cometió error al desestimar la defensa promovida por la corporación demandada.

Los errores tercero, cuarto, quinto y sexto, pueden y deben ser discutidos conjuntamente. Sostiene la corporación demandada que el demandante está impedido de entablar la presente acción y que la Corte de Distrito erró al no reconocerlo así y al declarar contraria a la ley la sección 25 del "Officers' Pension Fund."

El demandado fué empleado del Royal Bank of Canada desde el 1914 hasta el 1921, según se deduce de su propio testimonio. Se retiró del servicio siendo gerente del Banco. En 1927 volvió a desempeñar el mismo cargo, y en esta fecha, como en 1914, autorizó con su firma el documento que copiamos a continuación:

"El que suscribe, empleado de The Royal Bank of Canada, en consideración de mi empleo en dicho Banco, por la presente convengo y declaro que consiento y me obligo a todas las reglas y reglamentos de dicho Banco y del fondo de pensiones del mismo ahora en vigor y a todas las reglas y reglamentos que puedan adoptarse con posterioridad en relación con dicho fondo, y que cumpliré fielmente con dichas reglas."

No hay duda alguna de que el demandante aceptó los reglamentos del fondo de pensiones a sabiendas de su signifi-

·ción y contenido. Declara el demandante que se vió en la
alternativa de firmar o no firmar, y que si no hubiese fir-
mado habría tenido que abandonar la colocación. Añade que
·conoce el reglamento y que todo empleado menor de veintiún
años, al cumplir la mayoridad tiene que someterse a un exa-
men médico para ingresar en el fondo de pensiones, debiendo
irse del Banco si no pasa este examen. Hemos examinado
el reglamento y es verdad que en su sección quinta dispone
·que cualquier empleado no admitido al fondo de pensiones a
la edad de veintiún años se retirará del servicio del banco a
menos que esta regla sea especialmente renunciada (*waived*)
por la junta de directores de dicho banco. Es de suponerse
que esta regla, que se aplica a los menores que alcanzan la
mayoridad, se extiende también a las personas que solicitan
colocación en el banco al ser admitidas como empleados. Es
·ésta la conclusión que surge de una interpretación de la letra
y espíritu de este reglamento, que obliga a retirarse del banco
a los menores que al cumplir veintiún años no son admitidos
al fondo. No es, sin embargo, nuestro propósito discutir si
el consentimiento del Sr. Albizu fué o no voluntario. La
prueba demuestra que aceptó los reglamentos del fondo de
pensiones y que satisfizo periódicamente la cuota que le fué .
asignada.

La sección 10 de los referidos reglamentos dice que cuando
cualquier funcionario o empleado se retira del servicio, vo-
luntariamente o a virtud de destitución, sin tener derecho a
pensión, recibirá el 50 por ciento de los pagos hechos al fondo,
sin intereses, deduciéndose además cualquier cantidad que
pueda estar adeudando al banco. La corporación apelante
envió al demandante, en un cheque, el 50 por ciento del mon-
tante de su contribución, ajustándose a las disposiciones del
reglamento. No conforme con este descuento, el demandante
reclama la totalidad de las cantidades que satisfizo al fondo.
Alega el Sr. Albizu en su alegato que es nulo el reglamento
que impone los descuentos y que lo es también el consenti-
miento prestado. El artículo 1223 del Código Civil, citado

por la corte inferior, dice que la validez y el cumplimiento de los contratos no puede dejarse al arbitrio de uno de los contratantes.

La sección 25 del referido reglamento dice así:

"(a) La junta de directores tendrá poder para enmendar las reglas que gobiernan el fondo en cualquier tiempo, y para aprobar reglas adicionales de tiempo en tiempo.

"(b) Si bien se tiene la intención de administrar los fondos de acuerdo con los principios generales establecidos en las reglas que gobiernan dichos fondos, que están en vigor en cualquier tiempo, debe ser claramente entendido que estas reglas no confieren derechos adquiridos o legales (*legal or vested rights*) a ningún funcionario o empleado, y que ningún contrato, expreso o implícito, surgirá de las mismas, o por razón de cualquier expresión usada en ellas o acción tomada de acuerdo con ellas, y que cada pensión será concedida discrecionalmente por la junta de directores, y continuada solamente por el tiempo que dicha junta crea propio."

El fondo creado por el Banco no tiene otro propósito que la concesión de pensiones. Este es el único objetivo que se persigue. Los empleados y funcionarios que pagan sus cuotas, voluntaria o compulsoriamente, tienen derecho a esperar que el pago de las mismas originará alguna responsabilidad de parte de la institución que las recibe. Sin embargo, han firmado un documento en virtud del cual la junta de directores se reserva la facultad de conceder o negar pensiones a su arbitrio, haciendo constar que la aceptación de esta regla no crea vínculo jurídico alguno de carácter contractual ni confiere a los funcionarios o empleados un derecho adquirido (*vested right*). Esto equivale a dejar el cumplimiento de lo acordado en dicho reglamento al arbitrio de la junta de directores. Los oficiales y empleados del Banco quedan realmente a merced de dicha junta. Entre una y otra parte se advierte una desigualdad manifiesta. Las disposiciones del reglamento, de acuerdo con su sección tercera, son obligatorias para todos los oficiales y empleados del Banco admitidos al fondo. El oficial o empleado lo acepta todo, los reglamentos existentes que ya conoce y los que desconoce también,

puesto que en el documento que autoriza con su firma se impone la obligación de aceptar las reglas adoptadas y las que puedan adoptarse en el futuro. El Banco, por el contrario, a nada se obliga. Su junta de directores puede negar o conceder a su arbitrio la pensión de un empleado que ha satisfecho puntualmente la cuota que se fija en el reglamento.

Convenimos en que la corporación demandada podría ejercitar todas estas facultades si fuese de su exclusiva propiedad el dinero destinado al fondo de pensiones; pero creemos que no puede hacerlo desde el momento en que los empleados contribuyen con una parte de su salario al fondo mencionado.

En el caso de *McNevin* v. *Solvay Process Co.*, 32 App. Div. 610, confirmado por la Corte de Apelaciones de Nueva York, se trataba de un fondo establecido por la demanda para el beneficio de sus empleados, sin hacerles descuento alguno de sus salarios. El fondo fué voluntariamente creado por la demandada con dinero derivado de una parte de las ganancias de sus accionistas, que, a través de la corporación, renunciaron graciosamente a estas ganancias en beneficio de los referidos empleados. El Juez Follet, hablando a nombre de la corte en este caso, dice que una persona o corporación que se proponga dar una suma para el beneficio de otra persona o un número de personas, puede establecer las condiciones de su duración y las circunstancias bajo las cuales el derecho ha de convertirse en adquirido y absoluto. Claro está que estas condiciones se establecen cuando se trata de fondos propios. El caso es muy diferente cuando se paga una cuota para tener derecho a la pensión. Nadie dudará que cuando los empleados contribuyen a un fondo de pensiones creado para su beneficio, surge una relación contractual y se manifiesta la existencia de un derecho adquirido. El presente caso ofrece la particularidad de que los empleados aceptan que no hay derecho adquirido ni vínculo jurídico alguno, expreso o implícito, quedando a discreción de la junta de directores la concesión de pensiones, y esto por el tiempo que juzgue conveniente. Una transacción como ésta, en que la parte obli-

gada a conceder la pensión adopta un reglamento en virtud del cual no se confieren derechos ni se crean relaciones jurídicas a favor del empleado, adolece, a nuestro juicio, del vicio de nulidad. El fondo se crea con el único propósito de conceder pensiones. Es con este propósito que contribuye el empleado. No obstante, el reglamento desconoce a este empleado el derecho de exigir que se cumpla el propósito que determinó la creación del fondo. De modo que no se reconoce obligación exigible a favor de los empleados, mientras la junta de directores se reserva la facultad de actuar a su arbitrio con respecto a la concesión de pensiones.

Aquí, no solamente el cumplimiento de la obligación se deja claramente al arbitrio de esta junta de directores, sino que se declara de una manera expresa que no hay vínculo jurídico que proteja los derechos del empleado. " 'Arbitrio,' " según Scaevola, "quiere decir facultad, libre albedrío, voluntad, y aun capricho; 'validez', significa firmeza, subsistencia; y 'cumplimiento', ejecución, realidad, pudiendo considerarse tales elementos en esta nueva fórmula: 'La efectividad de un contrato no puede quedar a la merced o mera voluntad de una de las partes.' "

Scaevola comenta el artículo 1256 del Código Civil, equivalente al 1223 de nuestro código, comparándolo con preceptos de la legislación francesa que, aunque no iguales, tienen bastante analogía con dicho artículo. El Código de Napoleón, en sus artículos 1170 y 1174, dice que condición potestativa es aquella que hace depender la ejecución del contrato de un acontecimiento que puede una de las partes realizar o suspender, y que es nula toda obligación contraída bajo condición potestativa respecto a la persona obligada. Los comentaristas franceses Dalloz y Laurent sostienen que lo potestativo se circunscribe al deudor, al obligado, no siendo aplicable la invalidación de obligaciones cuando se refiere y mira al acreedor. Tratando este punto dice el comentarista Scaevola:

"Examinando el Código español, obsérvase que en el artículo 1115

habla, sí, unipersonalmente, sólo del deudor, mientras que en el 1256 lo hace con términos bipersonales dirigiéndose al arbitrio *de uno* de los contratantes, esto es, de cualquiera de ellos, con indistinción, lo que parece implicar referencia lo mismo al acreedor que al deudor.

"No hay antagonismo entre uno y otro precepto; acontece, sí, que el 1256 es genérico, mucho más abierto que el 1115, hasta el punto, según creemos haber ya dicho, de hallarse éste virtualmente comprendido en aquél. Ahora bien; en algunos contratos, hay un solo deudor, mejor dicho, queda obligada una sola de las partes; en tanto que en otros pueden quedar las dos, y en este caso el arbitrio referirse a cualquiera de ellas. Ejemplo: la compraventa, donde el vendedor viene obligado a la entrega de la cosa, y el comprador a la del precio; por lo que el señalamiento del precio no puede dejarse al arbitrio de cualquiera de ellos, según dispone el artículo 1449, fiel derivación o aplicación del 1256. El comprador y el vendedor son recíprocamente acreedor y deudor, y, por consiguiente, no es lícito dejar al arbitrio de cualquiera de ellos la efectividad del contrato. Se alegará la objeción de que tratándose del precio, si se deja a la voluntad del vendedor, resulta éste acreedor de él; mas conviene no olvidar que nunca pierde su calidad de deudor, porque el precio es por la entrega de la cosa, representando ni más ni menos que la concreción del valor económico de ésta, su equivalente; teniendo así las dos partes una naturaleza mixta de que no pueden desprenderse, y que les hace presentarse siempre frente a frente con la calidad de deudor.

"Una cosa análoga pasa en el arrendamiento de servicios. Al contratar yo a una persona para utilizar su trabajo, cualquiera que sea la índole de éste, soy acreedor a la prestación de sus servicios, y, a la vez, deudor para con ella del precio, y ella viceversa para conmigo: acreedor del precio y deudor de su esfuerzo intelectual o manual. Por virtud de esta mezcla de calidades, no puede quedar al arbitrio de cualquiera de los interesados la determinación del precio, o de otro elemento esencial del contrato, porque uno y otro ostentan en todo momento el carácter de deudor.

"Caso muy distinto es el del préstamo. En él hay un acreedor y un deudor, sin mezcla alguna entre sí, perfectamente deslindadas ambas cualidades, y el artículo 1256 sólo es aplicable en orden al segundo. ¿Qué importa que el prestamista diga: 'cobraré la cantidad entregada *si quiero?'.* A su arbitrio está siempre hacerlo: cobrar o no. Nadie ni nada, en lo jurídico, le impone ni exige el cobro; si lo estima conveniente, lo pide; y si no, no lo hace. Muy al contrario acontece con el prestatario; la entrega de la cantidad o préstamo lleva

consigo fatal y forzosamente la obligación de restituirla; si en el contrato se dice que 'la devolverá si quiere', no hay propiamente obligación en sentido genuinamente contractual.

"Acontecería lo mismo en el caso de un censo consignativo en que se estipulase que el censatario 'podría o no, a su voluntad, pagar la pensión.' El censualista puede o no reclamar la pensión sin necesidad de estipularlo; en cambio se alteraba profundamente éste, dejando a merced del censatario abonar o no el canon." Scaevola, Comentarios al Código Civil, tomo 20, página 520.

Comentando el mismo artículo dice Manresa:

"Dos son, a nuestro juicio, los motivos de justicia que fundamentan la terminante prohibición contenida en el artículo de este comentario. Uno, la fuerza obligatoria del contrato, el otro está en la igualdad esencial de los contratantes que impide quede uno sujeto al convenio y el otro libre de él, con lo cual en rigor sólo habría una voluntad expresada, un sujeto sometido y faltaría verdadero consentimiento . . ."

Entendemos que éste es uno de los casos comprendidos dentro del artículo 1223 del Código Civil. La junta de directores es la llamada a conceder las pensiones, y no puede ser válida una cláusula que le reserva el derecho de disponer de las mismas a su arbitrio y determina expresamente la no existencia de vínculo jurídico. Lo irrazonable de esta cláusula salta a la vista cuando se piensa que los derechos de los empleados quedan en la incertidumbre aun cuando haya surgido el derecho para obtener la pensión por haber pagado sus cuotas durante el tiempo requerido por el reglamento y cumplido con todos y cada uno de los requisitos convenidos. Para evitar estos casos es que el Código Civil dispone, en su artículo 1223, que la validez y cumplimiento de los contratos no puede dejarse al arbitrio de uno de los contratantes.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Señor Wolf disintió.*

---

* NOTA: Véase el prefacio.