LUIS FLORES y OTROS, demandantes y recurridos, *v.* MUNICIPIO DE CAGUAS, demandado y peticionario.

*Número:* O-83-1 *Resuelto:* 30 de junio de 1983

*Libertario Pérez Rodríguez*, de *Pérez, Guzmán & MacLean*, abogado del peticionario; *Maricarmen Ramos de Szendrey*, y *Raúl Tirado Rodríguez*, abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Los arquitectos Luis Flores, Torres, Beauchamp & Marvel se obligaron a rendir ciertos servicios al Municipio de Caguas en relación con el diseño y construcción de una planta de conversión de desperdicios sólidos a energía durante el período comprendido entre el 2 de octubre de

1980 y el 2 de febrero de 1982. El contrato contenía la siguiente cláusula:

## V. *TERMINATION AGREEMENT*

a. . . . . . . . .

b. The CONTRACTOR has the right to terminate this Agreement at its pleasure and shall have the absolute righ [*sic*] to abandon the work at any time and such action on its part shall in no event be deemed a breach of contract. In the event of such action on the part of the CONTRACTOR, the CONSULTANT shall deliver to the CONTRACTOR all drawings, specifications and estimates completed or partially completed. The amount of the fee due to the CONSULTANT for such work performed shall be based on a reasonable estimate mutually satisfactory to both parties to the Agreement.

El 30 de septiembre de 1981 el nuevo alcalde del Municipio de Caguas([1]) notificó, mediante una carta dirigida al arquitecto Flores, la terminación del contrato a tenor con la citada cláusula V(b). En dicha carta se solicitaba también la entrega del trabajo realizado hasta la fecha para evaluar el mismo y proceder a la liquidación de los pagos adeudados. Hasta ese momento la sociedad profesional había prestado servicios por espacio de un año, habiendo sido remunerada por tan solo cinco meses de este período. ([2])

Los arquitectos radicaron demanda alegando que la cancelación había sido ilegal. Solicitaron el cumplimiento específico de la obligación pactada. Reclamaron indemnización por las sumas adeudadas y por otros daños ocasionados por el incumplimiento del municipio. El municipio contestó aduciendo como defensa que la cancelación se había llevado a cabo de acuerdo con los términos del contrato. Además argumentó que la misma estaba justificada por el propio incumplimiento de los demandantes, quienes alega-

---

([1]) A raíz de las elecciones de 1980 hubo un cambio en la administración del Municipio de Caguas.

([2]) La remuneración fue pactada para ser pagada mensualmente a tenor con un itinerario preacordado.

damente no se habían ajustado a los términos del contrato en la labor realizada. Esta última alegación fue repetida por el municipio durante el trámite posterior de la demanda en sus contestaciones a los interrogatorios y requerimientos de admisiones que le fueran suministrados por la parte demandante. Sin embargo, nunca se detallaron los hechos en que se fundaba esta alegación ni se respaldó con otra evidencia documental. Los demandantes, por su parte, presentaron un memorándum del ingeniero Ángel L. López de la Unidad de Energía y Ambiente del municipio demandado, fechado al 31 de agosto de 1981, el cual certificaba el cumplimiento puntual y riguroso por parte de los demandantes de sus obligaciones bajo el contrato.

Posteriormente los demandantes radicaron una moción de sentencia sumaria en la cual alegaron que la cláusula V(b) del contrato era nula a tenor con lo dispuesto por el Art. 1208 del Código Civil, 31 L.P.R.A. sec. 3373.[3] Alegaron, además, que no había controversia de hecho porque el municipio había cancelado el contrato exclusivamente a base de la referida cláusula. El municipio compareció aduciendo que existía una controversia real y solicitó un término de 30 días para exponer los hechos en que ésta se fundaba. Sin embargo, al transcurrir este término, no compareció a someter esta prueba. El tribunal declaró con lugar la moción. Dictó sentencia a favor de los demandantes. Accedimos a revisar.

En su recurso el municipio sostiene que: (1) erró el tribunal de instancia al dictar sentencia sumaria cuando existía una controversia de hecho en cuanto al incumplimiento del contrato por parte de los demandantes, y (2) erró el tribunal al concluir que la cláusula V(b) del contrato viola las disposiciones del Art. 1208 del Código Civil.

---

[3] Este artículo dispone:

"La validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes."

 Está bien establecido que no procede una sentencia sumaria cuando existe una verdadera controversia de hecho entre las partes. Ver: *Rivera Encarnación* v. *E.L.A.*, 113 D.P.R. 383, 386-387 (1982); *Housing Inv. Corp.* v. *Sosa*, 98 D.P.R. 247, 250 (1970); *Morales* v. *Junta Exam. de Ing.*, 99 D.P.R. 84, 90 (1970); *C. Brewer P.R., Inc.* v. *F. Vega Otero, Inc.*, 92 D.P.R. 443, 449 (1965). Ahora bien, para determinar si existe o no una controversia de hecho un tribunal no tiene que limitarse a considerar las declaraciones que acompañan la moción, sino que puede tomar en cuenta todos los documentos obrantes en los autos. *Conde del Valle* v. *Tribunal Superior*, 102 D.P.R. 18, 20 (1974). Véanse también, 10A *Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d* Sec. 2721 (1983); 6 *Moore's Federal Practice* Sec. 56.11 (1983). Si surge que no existe una controversia real de hecho, entonces la parte opositora no podrá descansar meramente en aseveraciones generales contenidas en sus alegaciones, sino que, a tenor con la Regla 36.5, estará obligada a "demostrar que [tiene] prueba para sustanciar sus alegaciones". *Cortés Piñeiro* v. *Sucn. A. Cortés*, 83 D.P.R. 685, 690 (1961); *Valcourt Questell* v. *Tribunal Superior*, 89 D.P.R. 827, 833 (1964); *Lasanta Piñero* v. *Retto, Inc.*, 100 D.P.R. 694, 699 (1972); véase además, Wright *et al., op. cit.*, T. 10A, Sec. 2739.

En el presente caso los demandantes alegaron en su moción que el contrato había sido cancelado exclusivamente a base de la cláusula V(b) del contrato. Los documentos que obraban en autos —la carta del alcalde en que notifica la cancelación, y el memorándum del Ing. López— respaldaban esta alegación. Así, pues, no podía el municipio descansar en unas alegaciones vagas y generales de incumplimiento para impedir que el tribunal dilucidara lo que realmente era una controversia de Derecho. El error no fue cometido.

Señala el municipio que el tribunal de instancia erró al concluir que la referida cláusula confligía con el Art. 1208

del Código Civil, el cual prohíbe que la validez de una obligación quede al arbitro de una de las partes. Hemos reconocido la validez de cláusulas parecidas a la que nos ocupa, cuando la facultad de terminar el contrato está disponible para cualquiera de las partes. Véanse, *Arroyo & Valiente* v. *North British & Merc.*, 38 D.P.R. 176 (1928); *Casanova* v. *P.R.-Amer. Ins. Co.*, 106 D.P.R. 689 (1978). Sin embargo, el tribunal de instancia entendió que lo resuelto en éstos sólo es aplicable cuando ambas partes gozan de la facultad de resolver el contrato y que, por lo tanto, dicha cláusula es inválida cuando sólo le da este poder a una de las partes, citando nuestras decisiones de *Albizu* v. *Royal Bank of Canada*, 46 D.P.R. 503 (1934), y *C.R.U.V.* v. *Peña Ubiles*, 95 D.P.R. 311 (1967).

El primero de los casos citados por el tribunal de instancia es inaplicable a la situación de autos, ya que no trata sobre una cláusula que provea para la terminación del contrato y sí sobre la validez de un reglamento que permite a la Junta de Directores de un fondo de pensiones actuar a su arbitrio respecto a la concesión de pensiones. El de *Peña Ubiles* tampoco es aplicable. Se trataba de un contrato de arrendamiento entre la Corporación de Renovación Urbana y Vivienda (C.R.U.V.) y un individuo particular, que establecía que al finalizar el término del arrendamiento objeto del contrato éste sería prorrogable de mes a mes hasta que la arrendadora (C.R.U.V.) optara por no prorrogarlo. Al resolver nos basamos en la Ley de Alquileres Razonables, la cual dispone una prórroga automática del arrendamiento. Nos expresamos así, pág. 317:

> Examinado el contrato que nos ocupa, encontramos que se trata de un contrato—supuesto a durar toda la vida del inquilino y aun la de sus herederos, que es la correcta aspiración del arrendamiento protegido—que un mes después de firmado pierde toda su protección para el inquilino y lo deja a merced del Administrador de la Autoridad. Tal contrato resulta contrario al espíritu de protección económica y reparación social que le sirve de causa a la legislación que lo

inspiró, es contrario a la Ley puesto que por el mero vencimiento ficticio impuesto por el arrendador anula la prórroga automática de que disfrutan los alquileres privados y es contrario a la moral puesto que trata de inmovilizar la voluntad jurídica del hombre dentro de una concepción pragmática de un estado ideal, concebido en abstracto, con la correspondiente merma en los valores humanos.

Las cláusulas resolutorias unilaterales han sido utilizadas desde la antigüedad, considerándose el *dissensus* unilateral como uno de los modos de extinción de los contratos en el Derecho romano. Véanse, A. D'Ors, *Derecho Privado Romano*, 2da ed., Pamplona, Ediciones Univ. de Navarra, 1973, pág. 464; J. Arias Ramos, *Derecho Romano*, 6ta ed., Madrid, Ed. Rev. de Derecho Privado, 1954, T. II–III, pág. 724, n. 561; M. Planiol, *Treatise on the Civil Law* (trad. por el Louisiana State Law Institute), 11ma ed., 1939, Vol. 2, Pte. 1, Cap. XII, pág. 744. En la actualidad el pacto resolutorio unilateral se encuentra expresamente reconocido en los códigos civiles de Alemania, Art. 346, e Italia, Art. 1456. Véanse: L. Enneccerus *et al.*, *Tratado de Derecho civil: Derecho de obligaciones* (anotado por B. Pérez González y J. Alguer), 2da ed., Barcelona, Ed. Bosch, 1954, T. II, Vol. I, pág. 194; J. W. Hedemann, *Derecho de Obligaciones* (trad. por J. Santos Briz), 1958, Vol. III, pág. 142; L. Mosco, *La resolución de los contratos por incumplimiento* (trad. por J. Pintó Ruiz), Barcelona, Ed. Dux, Cap. IX, pág. 199 *et seq.*; E. Betti, *Teoría General de las Obligaciones* (trad. por J. L. de los Mozos), Madrid, Ed. Rev. de Derecho Privado, 1970, T. II, pág. 336.

Por otro lado, aunque no figura expresamente en los códigos de Francia y España, este tipo de cláusula cuenta con universal aceptación en la doctrina civil de estos dos países. Véanse, en España: Q. M. Scaevola, *Código Civil*, 2da ed., Madrid, Ed. Reus, 1958, T. XX, págs. 596–599; L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 3ra ed., Madrid, Ed. Tecnos, 1982, Vol. 2, Cap. 21, págs. 305–306; J.

Lacruz Berdejo, *Elementos de Derecho Civil*, Barcelona, Ed. Bosch, 1977, Vol. II, pág. 170; M. Albaladejo, *Curso de Derecho civil español, común y foral*, Barcelona, Ed. Bosch, 1977, Cap. IX, pág. 270; en Francia: H. Mazeaud *et al., Lecciones de Derecho Civil* (trad. por L. Alcalá-Zamora y Castillo), 1960, Vol. III, Pte. II, pág. 13; C. Aubry y P. Raynaud, *Droit Civil Francais* (trad. por M. Zorrilla Ruiz), 6ta ed., 1971, Vol. IV, pág. 649; A. Weill y F. Terré, *Droit Civil: Les Obligations*, 2da ed., Francia, Ed. Dalloz, 1975, pág. 552.

■ El fundamento para esta solución se halla en la distinción entre la validez del contrato y su duración. En efecto, se reconoce que una cosa es que una parte tenga la facultad de decidir si el contrato existe o no, si está obligada o no lo está, y otra que exista un contrato válido cuyo término dependa exclusivamente de la voluntad de una de las partes. La prohibición del Art. 1208 (Art. 1.256 del Código Civil español) sólo alcanza al primero de estos supuestos. En cuanto al segundo, la obligación contraída subsiste con todos sus efectos legales hasta que la parte así facultada decida ponerle fin. Véanse la sentencia del Tribunal Supremo de España del 16 de diciembre de 1963, núm. 5322, Aranzadi, XXX Repertorio de Jurisprudencia 3413; Scaevola, *op. cit.*, págs. 596–599; Mazeaud, *op. cit.*, pág. 13. Véase además, *Arroyo & Valiente* v. *North British & Merc.*, supra, págs. 181–182.

La cláusula resolutoria unilateral también se considera válida en la *Common Law.* Véanse, *Corbin on Contracts* Sec. 1266; H. Black, *A Treatise on the Recission of Contracts and Cancellation of Written Instruments*, 2da ed., Missouri, Vernon Law Book Co., 1929, Vol. 2, Sec. 516, pág. 1271; C. Dunham y R. Young, *Contracts, Specifications and Law for Engineers*, New York, McGraw-Hill, 1958, pág. 112.

■ Nuestro Código Civil es virtualmente idéntico al español. Carece, por lo tanto, de un articulado que regule la cláusula resolutoria unilateral. El Art. 1077 (31 L.P.R.A.

sec. 3052) contempla la llamada condición resolutoria tácita, que permite la resolución unilateral del contrato cuando la otra parte hubiere incumplido su obligación. Esta condición opera *ex proprio vigore,* aunque no es infrecuente encontrarla incluida en un contrato. Véase, *Clausells* v. *Salas,* 51 D.P.R. 89 (1937).

█ Ahora bien, lo anterior no significa que las partes no puedan pactar para incluir en sus contratos una cláusula que le confiera a una sola de ellas la facultad de poner fin a la relación contractual sin exigir para ello otro requisito que la mera voluntad de la parte de así hacerlo. Hemos visto que este tipo de cláusula es válida en España y Francia, aunque no se halla expresamente prevista por los códigos de estos países. En nuestro Derecho este pacto ha de interpretarse generalmente a base de lo dispuesto por el Art. 1207 del Código Civil, 31 L.P.R.A. sec. 3372, que permite a los contratantes establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, a la moral, ni al orden público. *Cf.* la nota de Pérez González y Alguer a la obra de Enneccerus, *op. cit.,* pág. 198.

█ Por otro lado, existen ciertas disposiciones específicas para algunos contratos particulares que conceden la facultad a una sola de las partes de desistir unilateralmente del contrato. Tal es el caso del mandato, Art. 1624[4] del Código Civil, 31 L.P.R.A. sec. 4482, y del contrato de obra, Art. 1486,[5] 31 L.P.R.A. sec. 4127, aunque para este último se exige que el dueño indemnice al contratista por todos los gastos y trabajos incurridos, además de la utilidad que hubiera podido derivar de la obra.

---

[4] Dispone así:

"El mandante puede revocar el mandato a su voluntad, y compeler al mandatario a la devolución del documento en que conste el mandato."

[5] Dispone así:

"El dueño puede desistir, por su sola voluntad, de la construcción de la obra aunque se haya empezado, indemnizando al contratista de todos sus gastos, trabajos y utilidad que pudiera obtener de ella."

En el caso de autos se trata precisamente de un contrato de obra, por lo que es indudable la facultad del dueño de desistir unilateralmente, a tenor con el Art. 1486. Siendo ello así, la controversia se reduce en última instancia a determinar si es posible pactar una indemnización menor a la dispuesta por el Código. Tratándose de partes que contrataron en igualdad de condiciones y disponiendo la cláusula en cuestión que el trabajo efectivamente realizado habría de ser remunerado, no encontramos dificultad alguna para resolver en la afirmativa.

La sentencia recurrida ha argumentado en contrario caracterizando erróneamente la cláusula envuelta en este caso como una instancia de la "cláusula de terminación por conveniencia" (*termination for convenience clause*) que se estima presente en todos los contratos celebrados por el Gobierno de los Estados Unidos. Ésta surge de la doctrina jurisprudencial iniciada con el caso de *U. States* v. *Corliss Steam-Eng. Co.*, 91 U.S. 321 (1875), que sostiene que el poder de contratar que tiene el Gobierno federal incluye la facultad de terminar los contratos cuando el interés público lo requiera, sin que esta terminación pueda considerarse incumplimiento por parte del Gobierno. Esta facultad se estima presente, aunque no se haya estipulado expresamente en los contratos. Sin embargo, hoy día se acostumbra incluirla, en alguna de sus variantes, en la redacción de virtualmente todos los contratos gubernamentales. (⁶) Véanse: H. Andrews, Jr.

---

(⁶) Su redacción más común es la siguiente:

"TERMINATION FOR CONVENIENCE OF THE GOVERNMENT

"(a) The performance of work under this contract may be terminated by the Government in accordance with this clause in whole, or from time to time in part, whenever the Contracting Officer shall determine that such termination is in the best interest of the Government. Any such termination shall be effected by delivery to the Contractor of a Notice of Termination specifying the extent to which performance of work under the contract is terminated, and the date upon which such termination becomes effective." Véase, R. Mitchell y J. Tracy, *Terminations of Government Contracts: Recent Developments*, 14 Wm. & Mary L. Rev. 817, 878 Ap. B (1973).

y R. Peacock, *Terminations: An Outline of the Parties' Rights and Remedies*, 11 Pub. Cont. L.J. 269 (1980); R. Mitchell y J. Tracy, *Terminations of Government Contracts: Recent Developments*, 14 Wm. & Mary L. Rev. 817 (1973); L. Lerner, *Tying Together Termination for Convenience in Government Contracts*, 7 Pepperdine L. Rev. 711 (1980).

Originalmente la doctrina se desarrolló como medio para proteger al Gobierno de los repentinos avances tecnológicos que muchas veces rendían obsoletos los equipos y servicios ya contratados. Consistentemente halla su mayor aplicación en los contratos relacionados con las emergencias bélicas. Véase, Lerner, *op. cit.*

Para atemperar los rigores de la cancelación unilateral, la cual en ocasiones ha conducido a injusticias, los tribunales no permiten al Gobierno servirse de esta cláusula si actúa de mala fe, *Librach & Cutler* v. *United States*, 147 Ct. Cl. 605 (1959); *National Factors, Inc.* v. *United States*, 492 F.2d 1383 (1974); Andrews y Peacock, *op. cit.;* o si no ha habido cambio alguno en las circunstancias y condiciones que propiciaron el contrato de primera intención. *Torncello* v. *United States*, 681 F.2d 756 (1982). Por otro lado, el Gobierno también viene obligado, al igual que bajo la cláusula objeto del presente litigio, a remunerar el trabajo llevado a cabo al momento de la terminación. M. Perlman y W. Goodrich, Jr., *Termination for Convenience Settlements— The Government's Limited Payment for Cancellation of Contracts*, 10 Pub. Cont. L.J. 1 (1978); Andrews y Peacock, *op. cit.* Aparentemente es en este parecido que la sentencia recurrida funda su contención de que en este caso se trata de una cláusula de terminación por conveniencia. No tiene razón.

Como hemos visto, la cláusula V(b) del contrato entre el municipio y los recurridos no dependía de ningún cambio en las circunstancias. A tenor con ella, la facultad de resolver la obligación podía ejercitarse en cualquier momento por el municipio. Por lo mismo, esta cláusula tenía que

532

ser expresa, o de lo contrario no hubiera podido resolverse el contrato de este modo. Estos factores demuestran que no se trataba de una cláusula de terminación por conveniencia. Pero, aunque así hubiera sido, esto en nada alteraría el resultado, puesto que la validez de este tipo de cláusulas es igualmente indiscutible. Habiéndose limitado los recurridos a impugnar su validez como contraria a Derecho, está claro que no podían prevalecer.

Por los fundamentos expresados, *se revocará la sentencia recurrida y se devolverá el caso para ulteriores procedimientos.*

El Juez Presidente Señor Trías Monge se inhibió. Los Jueces Asociados Señores Torres Rigual y Rebollo López no intervinieron.