Fraticelli Torres, Jueza Ponente
TEXTO COMPLETO DE LA SENTENCIA
La parte peticionaria, Bus Shelters Interamericana S.A. Inc., nos solicita la revocación de una resolución dictada el 22 de septiembre de 2004, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (Hon. Héctor Clemente Delgado, J.), mediante la cual denegó la “Moción urgente solicitando paralización de subasta en auxilio de jurisdicción”, en el caso de Bus Shelters Interamericana S.A. Inc. v. Municipio de Guaynabo, Civil DPE 2002-1013 (404), sobre sentencia declaratoria, interdicto preliminar permanente y daños y peijuicios. Dicha determinación fue reiterada mediante orden del 30 de septiembre de 2004, cuya revocación también se nos solicita.
Las partes litigantes suscribieron un contrato el 10 de junio de 1999 para la instalación y mantenimiento de cobertizos, con fines publicitarios, en las paradas de autobuses del Municipio de Guaynabo. El contrato, inscrito bajo el número 99001091, estaría vigente por el plazo de cinco años, y podía ser renovado por un término adicional de cinco años, según acordado en la cláusula quinta. Esta cláusula es el eje de la controversia que se presenta ante nos. Textualmente dispone:

"De no renovarse el contrato o de cancelarse el mismo por causa justificada antes de su expiración, el Municipio podrá:

a. Ordenar a la Corporación que sin costo alguno al Municipio, remuevja] los cobertizos y restaure el área donde éstos estuvieron instalados a su condición original, dentro de un plazo no mayor de ciento ochenta (180) días.

b. Si el Municipio optare por adquirir dichos cobertizos, le otorgará a la Corporación la primera opción de continuar operándolos”.

Vigente el contrato, el 8 de abril de 2002, el vice-alcalde del Municipio de Guaynabo, señor Effaín Pérez Jiménez, envió una carta al Dr. Robert P. Sheldon, presidente de Bus Shelters Interamericana S.A. Inc., con el propósito de rescindir [sic] el contrato “dentro de los próximos treinta (30) días, a partir del recibo de la presente notificación”. Basó la facultad resolutoria en la cláusula decimoctava del contrato, que dispone:

“El Municipio podrá resolver y dar por terminado el presente contrato después del primer año previa notificación escrita a la Corporación con treinta días de anticipación a la fecha en que se pretende dejar sin efecto el contrato, disponiéndose que el Municipio podrá ejercitar este derecho a su entera voluntad sin que necesariamente tenga que mediar incumplimiento del contrato por parte de la Corporación. ”

Bus Shelters Interamericana S.A. Inc. demandó al Municipio de Guaynabo el 12 de diciembre de 2002, *962 mediante una solicitud de sentencia declaratoria, interdicto preliminar y permanente y daños y perjuicios por la terminación del acuerdo. Luego de presentada la demanda, el 11 de marzo de 2003, el Municipio presentó una moción de desestimación en la que alegó que podía dar por terminado el contrato mediante notificación con treinta días de anticipación, sin que mediara justa causa, porque tal facultad le fue reservada en la cláusula decimoctava el contrato.
El 21 de marzo de 2003, Bus Shelters presentó su oposición a la moción de desestimación y solicitó una sentencia sumaria parcial dirigida a interpretar el texto del contrato a favor de que la cancelación anticipada requería causa justificada. El Tribunal de Primera Instancia, por voz de la honorable Sonia Ivette Vélez Colón, dictó sentencia parcial el 27 de mayo de 2003, en la que denegó la desestimación solicitada por el Municipio y concluyó que los conceptos de buena fe y justa causa aplicaban al desistimiento unilateral del contrato, si no mediaba incumplimiento del contrato. En dicha sentencia parcial se decretó la nulidad de la actuación del Municipio de dejar sin efecto el contrato a través de una carta y “todos los demás actos que en función a la misma se hayan realizado”. El tribunal pospuso la atención de los daños y pequicios patrimoniales reclamados para procedimientos posteriores.
A partir de ese momento, las partes siguieron vinculadas por el contrato y Bus Shelters continuó consignando en el tribunal los pagos adeudados al Municipio por virtud del acuerdo.
El 26 de mayo de 2004, Bus Shelters notificó al Municipio de su intención de renovar el contrato. Dicha oferta fue rechazada por el Municipio mediante carta de 30 de junio de 2004, en la que le requiere, además, remover los cobertizos en un término no mayor de 180 días. El 22 de julio siguiente, el Municipio reiteró igual pedido y le concedió 10 días adicionales para ello.
La Junta de Subastas del Municipio, ante la determinación de no renovar el contrato, publicó un aviso de subasta para recibir proposiciones para la instalación de nuevos cobertizos en las paradas establecidas para la transportación pública, es decir, con un objeto similar al que cumplía el contrato de marras.
El 29 de julio de 2004, Bus Shelters presentó una moción urgente en auxilio de jurisdicción en la que solicitó la paralización de la subasta, al amparo de la Regla 56.1 de Procedimiento Civil, 32 L.P.R.A. Ap. IH, R. 56.1. Pidió ser relevado de la prestación de fianza porque el remedio se gestionaba en virtud de una sentencia. Regla 56.3 de Procedimiento Civil, 32 L.P.R.A. Ap. HI, R. 56.3. El Municipio alegó que no procedía la paralización de una subasta si el peticionario no cumplía con los criterios legales aplicables a ese proceso y sin la previa prestación de fianza, entre otras razones, las que fueron oportunamente replicadas por la peticionaria, Bus Shelters.
Posteriormente, Bus Shelters informó al tribunal que había notificado por escrito al Municipio su intención de renovar el contrato y le pidió, mediante “Moción informativa y solicitud de orden” de 14 de junio de 2004, que “orden[araJ a las partes a cumplir con el referido contrato según extendido”. El tribunal, mediante orden de 6 de julio de 2004, declaró un escueto “con lugar” a dicha moción. Bus Shelters alega que dicha orden tuvo el efecto de compeler a las partes a cumplir con el contrato según extendido.
Luego de sendas oposiciones, réplicas y una moción suplementaria sobre el asunto de la paralización de la subasta, el 16 de agosto de 2004, el Tribunal de Primera Instancia (Hon. Héctor Clemente Delgado, J.) dictó la resolución recurrida, la que denegó la paralización de la subasta y determinó que la comunicación enviada por el Municipio el 30 de junio de 2004, tuvo el efecto de dar por terminada la relación contractual entre las partes. Sostuvo el tribunal que “[p]ara ser prorrogado [el contrato], tenía que ser aceptado por ambas partes, lo que no ocurrió. Ello así, en vista de que el Municipio de Guaynabo no desea prorrogar el contrato, según lo notificó oportunamente a la demandante. ” Concluye que la falta de consenso para reanudar la relación contractual, “es suficiente para dar por terminado el mismo” y que “[a]l ejercer válidamente su opción de no renovar el *963 contrato, el mismo finalizó y el Municipio de Guaynaho tiene la libertad de celebrar, de acuerdo a la Ley de Municipios Autónomos, una subasta pública para otorgar un nuevo contrato. ” Denegó, por lo expresado, la petición de paralización de la subasta. Aún más, mediante Orden de 30 de septiembre de 2004, el tribunal aclaró el alcance de la sentencia parcial dictada el 27 de mayo de 2004 al afirmar que “no concede a la demandante un derecho de renovación perpetuo del contrato. Ese dictamen se limita a decretar la improcedencia de la terminación del contrato de 10 de junio de 1999 sin justa causa. ”
Como único error, la peticionaria alega que el tribunal recurrido “erró al negarse a imprimirle validez a la renovación del contrato conforme a las disposiciones contractuales aplicables. ”
Luego de la presentación del recurso de autos, la peticionaria ha sometido ante nuestra consideración dos mociones en auxilio de jurisdicción, el 12 y 20 de enero de 2004, para evitar la ejecución de una orden dictada por el tribunal recurrido el 12 de enero de 2005 que intima a Bus Shelters, Interamericana, S.A., Inc. a remover los cobertizos en el plazo de 10 días, so pena de que el Municipio de Guaynabo lo haga y le reclame el costo de la gestión.
La parte recurrida no ha comparecido a oponerse al recurso ni fue intimada por este foro a así hacerlo. Procedemos a disponer del recurso y de la petición de auxilio de conformidad con el derecho vigente.
n
El presente recurso presenta una compleja gama de cuestiones jurídicas que no surgen de manera diáfana y precisa de los documentos que conforman el expediente del caso. Al examinar las alegaciones de la parte peticionaria, así como las actuaciones de ambas partes durante el litigio y las determinaciones judiciales que justifican la petición, hemos identificado varios asuntos que deben atenderse con algún detenimiento antes de resolver la única cuestión planteada con el rigor que merece. El recurso no puede despacharse con la atención inmediata de la paralización de la subasta, porque la validez de dicho acto depende de la naturaleza y del alcance de algunas actuaciones judiciales previas y de la interpretación que demos al contrato que da base al recurso. Por ello, hemos de examinar: (a) la normativa aplicable a la validez de la cláusula que admite la resolución unilateral por parte del Municipio; (b) la interpretación adecuada de la cláusula que admite la renovación o la negativa de renovación del contrato; y (c) la naturaleza de la “sentencia parcial" en que la peticionaria basa su reclamo, así como el efecto que las determinaciones posteriores recurridas producen sobre dicha “sentencia parcial”. Luego, en el mismo orden, aplicaremos las normas reseñadas a los hechos del caso.
A. La validez de las cláusulas contractuales
En nuestro sistema de derecho, “los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que, según su naturaleza, sean conformes a la buena fe, al uso y a la ley”. Artículo 1210 Código Civil, 31 L.P.R.A. see. 3376. Las partes contratantes "pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público". Artículo 1207 Código Civil, 31 L.P. R.A. see. 3372. Flores v. Municipio de Caguas, 114 D.P.R. 521, 529 (1983); Umpierre v. Torres Díaz, 114 D.P.R. 449, 459 (1983); Tastee Freez v. Negdo. Seg. Empleo, 108 D.P.R. 495, 501 (1979); Hernández v. Méndez & Assoc. Dev. Corp., 105 D.P.R. 149, 153 (1976); Castell Enterprises v. Registrador de la Propiedad, 87 D.P.R. 775, 781 (1963).
Estas normas reconocen un doble postulado en la teoría general de la contratación; de un lado, la libertad de contratación; de otro, la total autonomía de la voluntad de los contratantes que han escogido obligarse mutuamente para determinar el contenido de dicha relación jurídica, limitada únicamente dicha autonomía por los parámetros que impongan la ley, la moral social y el orden público. Una vez los contratantes eligen contratar entre sí, pueden pautar el contenido y alcance normativo de su relación jurídica, sin otra intromisión del Estado que la *964 impuesta por los parámetros descritos.
Tan importante es la voluntad dual libremente expresada, por medio del consentimiento libre e informado de ambos contratantes, que el Código Civil postula como axioma básico de la teoría general de la contratación que “la validez y [el] cumplimiento [del contrato así perfeccionado] no puede dejarse al arbitrio de una de las partes.” Artículo 1208 Código Civil, 31 L.P.R.A. see. 3373.
En Flores v. Municipio de Caguas, 114 D.P.R. 521 (1983), al interpretar el Art. 1208 del Código Civil, 31 L. P.R.A. see. 3373, el Tribunal Supremo validó una cláusula resolutoria unilateral que permitía que una de las partes terminara el contrato “at its pleasure” y que de antemano, establecía que el ejercicio de la misma no constituía un incumplimiento de contrato. (Énfasis nuestro, ya que es calco fiel de la cláusula decimoctava del contrato que obra en autos.) Dicha opinión resolvió que, aunque nuestro Código Civil carece de un articulado que regule la resolución unilateral expresa, las partes pueden incluir en sus contratos una cláusula que le “confierfa] a una sola de ellas la facultad de poner fin a la relación contractual sin exigir para ello otro requisito que la mera voluntad de la parte de así hacerlo”. Id., a la pág. 529.
En el caso de Flores, el Tribunal Supremo rechaza el razonamiento del tribunal recurrido, el que “entendió que lo resuelto en [casos anteriores] sólo es aplicable cuando ambas partes gozan de la facultad de resolver el contrato y que, por lo tanto, dicha cláusula es inválida cuando sólo le da este poder a una de las partes, citando [las] decisiones de Albizu v. Royal Bank of Canada, 46 D.P.R. 503 (1934), y C.R. U.V. v. Peña Ubiles, 95 D.P.R. 311 (1967). ” Al rechazar dicho razonamiento, concluyó que:

“Las cláusulas resolutorias unilaterales han sido utilizadas desde la antigüedad, considerándose el dissensus unilateral como uno de los modos de extinción de los contratos en el Derecho romano. [Extensas citas omitidas.] En la actualidad, el pacto resolutorio unilateral se encuentra expresamente reconocido en los códigos civiles de Alemania, Art. 346, e Italia, Art. 1456. [Citas omitidas.] Por otro lado, aunque no figura expresamente en los códigos de Francia y España, este tipo de cláusula cuenta con universal aceptación en la doctrina civil de estos dos países. [Citas omitidas.]

El fundamento para esta solución se halla en la distinción entre la validez del contrato y su duración. En efecto, se reconoce que una cosa es que una parte tenga la facultad de decidir si el contrato existe o no, si está obligada o no lo está, y otra que exista un contrato válido cuyo término dependa exclusivamente de la voluntad de una de las partes. La prohibición del Art. 1208 (Art. 1.256 del Código Civil español) sólo alcanza al primero de estos supuestos. En cuanto al segundo, la obligación contraída subsiste con todos sus efectos legales hasta que la parte así facultada decida ponerle fin. Véanse la sentencia del Tribunal Supremo de España del 16 de diciembre de 1963, núm. 5322, Aranzadi, XXX Repertorio de Jurisprudencia 3413; Scaevola, op. cit., págs. 596— 599; Mazeaud, op. cit., pág. 13. Véase además, Arroyo & Valiente v. North British & Merc., supra, págs. 181— 182.”
Flores v. Municipio de Caguas, 114 D.P.R. _, a las págs. 526-28.
El fundamento principal de la opinión es que existe una distinción entre la duración de un contrato (concepto que asocia a cumplimiento) y su validez; por tanto, ese tipo de cláusula no violenta el texto del Artículo 1208 y sí recibe amparo bajo el Artículo 1207, disposición que establece en nuestro derecho el axioma básico de la autonomía de la voluntad. Lo que importa es que ambas partes acuerden conceder a una sola de ellas tal facultad resolutoria, sin necesidad de sujetarla al previo incumplimiento de la otra parte. A ello se refiere el Artículo 1077 del Códig Civil, 31 L.P.R.A. see. 3052, asunto que no hay que evaluar en esta ocasión. Véase sobre el particular, Clausells v. Salas, 51 D.P.R. 89 (1937).
Igual solución jurídica se ofrece en Casanova Díaz v. Puerto Rican-American Insurance Company, 106 DPR *965 689, 695 (1978). Al reiterar la doctrina adoptada en Flores, el tribunal concluye que el Art. 1208 del Código Civil “no prohíbe las cláusulas resolutorias en los contratos. Estas cláusulas que permiten la terminación del contrato a base de la voluntad de cualquiera de las partes, están en armonía con el principio de libertad en la contratación.” Véase Figueroa Piñero v. Miranda & Eguía, 83 D.P.R. 554, 555-557 (1961); Arecibo Motors Co. v. Caribe Motors Corp., 60 D.P.R. 401, 407, 409 (1942); Clausells v. Salas, 51 D.P.R. _, a la pág. 95.
B. Las normas de interpretación del contrato
De conformidad con el Artículo 1233 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3471, “[s]i los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas.” (Énfasis nuestro.) Para determinar cuál fue la intención de los contratantes, el Artículo 1234 del mismo código dispone que “deberá atenderse principalmente a los actos de éstos, coetáneos y posteriores del contrato” y la jurisprudencia provee que también se tomará en consideración los actos anteriores a la contratación. Artículo 1234 del Código Civil, 31 L.P.R.A. see. 3472; Casanova v. Puerto Rican American Insurance Company, 106 D.P.R. _, a las págs. 696-697. Sin embargo, no hay que recurrir a variadas teorías de interpretación cuando el contrato, como ente integrado, permite deducir la intención común de los contratantes y los efectos lógicos y consecuentes que de él emanan. Por ello, la Regla 69 de Evidencia, 32 L.P.R.A. Ap. IV, R. 69, no admite la presentación de evidencia extrínseca al acuerdo escrito cuando el propio contrato provee la intención contractual con relativa claridad e integración Si no se cuestiona la validez del contrato como acto jurídico —cosa que no se ha hecho en el caso de autos — , ni se refiere la causa de acción a conductas o comportamientos que puedan haber afectado la formación o el objeto del contrato, el intérprete debe ajustarse al texto claro de las cláusulas pactadas y limitarse a encontrar en ellas el verdadero sentido de lo acordado.
Cuando, como en el presente caso, la interpretación requiera la evaluación gramatical de la cláusula en controversia, se atenderá a los usos comunes de los vocablos y se buscará el sentido “más adecuado para que produzca efecto”. Artículo 1236 del Código Civil, 31 L.P.R.A. see. 3474. En esta gestión, el intérprete atenderá a la totalidad del contrato y “atribuirá a las [cláusulas] dudosas el sentido que resulte del conjunto de todas.'”
En Asoc. Vec. Altamesa Este v. Mun. San Juan, 140 D.P.R. 24, 42 (1996), citando a Bemier y Cuevas Segarra, Aprobación e Interpretación de las Leyes en Puerto Rico, 2da ed., Publicaciones JTS, 1987, pág. 353; Mari Bras v. Alcaide, 100 D.P.R. 506 (1972); Pueblo v. Febres Colón, 95 D.P.R. 172 (1967); y Pueblo v. Mantilla, 71 D.P.R. 36 (1950), el tribunal afirmó que “[e]l uso de la conjunción disyuntiva 'o' tiene el efecto... de desvincular las palabras entre las que es usada.” Otra sería la solución si pudieran intercambiarse ambas conjunciones, o si atentara la interpretación al propósito evidente de la ley o del contrato. Igual interpretación sostuvo en Alejandro Rivera v. ELA, 140 D.P.R. 538, 543-44 (1996). La disyuntiva ‘o’ utilizada en una ley o en un contrato —cuyas regías de interpretación son análogas — , debe entenderse en el sentido lógico y natural que impone la oración. No puede el intérprete forzar su función gramatical con el pretexto de hallar una intención común que la regla lingüística no admite, sobre todo, si la frase u oración en que se encuentra no presenta ambigüedad ni confusión al leerla y, al contrario, cuando otras cláusulas en el contrato fortalecen la interpretación simple y llana de lo expresado.
C. La naturaleza y peso de la sentencia parcial dictada previamente en el caso
La “sentencia parcial” dictada el 27 de mayo de 2003 por un juez distinto al que emitió la resolución y orden recurridas, presenta dos aspectos de interés para el recurso; el primero, si tuvo carácter “final” y, no habiéndose cuestionado en alzada, si ello convirtió tal determinación en cosa juzgadá, para efectos del recurso, respecto a las cuestiones que atendió y resolvió. Carente de ese carácter de finalidad, no tendría más valor o efecto que una resolución interlocutoria, la que podría reconsiderarse por el tribunal en cualquier momento antes de la terminación del pleito. Por ser de distinta naturaleza, de no aplicar la doctrina de cosa juzgada, debemos *966 considerar en segundo lugar, si procede aplicar “la ley del caso” a las determinaciones posteriores tomadas en el mismo pleito.
Es doctrina reiterada por el Tribunal Supremo que una sentencia parcial que no ponga fin al pleito y sólo atienda y resuelva una controversia en el litigio, no puede considerarse una “sentencia final”, con los efectos que tal determinación tiene para el sistema. Camaleglo v. Dorado Wings, Inc., 118 D.P.R. 20, 26 (1986). Con la consecuencia de que, en nuestra jurisdicción, un juez de primera instancia no queda atado por las determinaciones interlocutorias, aun cuando éstas no hayan sido objeto de reconsideración o revisión.
Lo dispuesto en la Regla 43.5, 32 L.P.R.A. Ap. HI, R. 43.5, sobre sentencias parciales finales es aplicable sólo en una de dos situaciones, o en ambas: (1) en pleitos donde se estén planteando múltiples reclamaciones, y el dictamen del tribunal adjudica menos del total de las reclamaciones; o (2) en casos comprendidos por múltiples partes, y el tribunal resuelve la totalidad de una reclamación con respecto a alguna de las partes. U.S. File Ins. Co. v. A.E.E., 151 D.P.R. _ (2000), res. el 13 de septiembre de 2000, 2000 J.T.S. 146, a las págs. 92-93.
La Regla 43.5 “[n]o es aplicable, sin embargo, cuando lo que resuelve el tribunal es sólo una controversia, aunque ésta sea separable de las restantes. ” Camaleglo v. Dorado Wings, Inc., 118 D.P.R._, a la pág. 26; José. A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Publicaciones JTS, Tomo II, pág. 703, (2000). Por tanto, no sería “final” un dictamen interlocutorio del tribunal que sólo resuelve una controversia en el caso; y al no ser “final”, no puede ser ejecutable, aunque incluya la certificación de finalidad de la que habla la Regla 43.5. Díaz v. Navieras de P.R., 118 D.P.R. 297, 302 (1987), según citados en Ramos y otros v. Colón y otros, 153 D.P.R. _ (2001), res. el 6 de marzo de 2001, 2001 J.T.S. 33, a las págs. 958-59. Como tal, dicha resolución estaba sujeta a reconsideración en cualquier momento antes de dictarse sentencia adjudicando finalmente todos los planteamientos jurídicos del pleito. Camaleglo v. Dorado Wings, Inc., 118 D.P.R. _, a la pág. 26; Rafael Hernández Colón, Derecho Procesal Civil, Ed. Michie de Puerto Rico, § 4107, pág. 283 (1997).
Cuando una determinación judicial fracciona los elementos de la causa de acción y se expresa sobre uno de ellos, dejando la atención de los demás para más tarde, el dictamen no es final. Así ocurre cuando se fraccionan los elementos de negligencia y daños. Una determinación sobre la primera no resuelve “finalmente la cuestión litigiosa[,] de la cual pueda apelarse o solicitarse revisión”. Regla 43.1 de Procedimiento Civil, 32 L.P.R.A. Ap. IH, R. 43.1. Díaz v Navieras de P.R., 118 D.P.R. _, a la pág. 301. Cuando la causa de acción se basa en el incumplimiento de contrato, los remedios interdictales y los daños que de ella discurren dependen de la previa determinación sobre el incumplimiento. La atención de esa cuestión no concluye la reclamación hecha. Es la antesala necesaria, pero no le da finalidad al litigio.
El segundo aspecto que nos vemos obligados a considerar es si la sentencia de 27 de mayo de 2003 constituía efectivamente “la ley del casó”, en cuyo supuesto, sí regiría las determinaciones subsiguientes dictadas en el pleito. Por la generalización de su uso y por su impacto en este caso específico, debemos expresamos sobre su aplicación y alcance en Puerto Rico. La ley del caso no es doctrina que goce de aceptación incondicional en nuestra jurisdicción cuando se cuestiona su corrección dentro de los procesos judiciales en curso. Dicha doctrina se desarrolla en el derecho común anglosajón, aunque fue recibida con algún recelo en el derecho patrio, de entronque civilista. Torres Cruz v. Municipio de San Juan, 103 DPR 217, 222 (1975); Don Quixote Hotel v. Tribunal Superior, 100 D.P.R. 19, 30 (1971). En Puerto Rico rige el Código Civil y, por lo tanto, no existe fundamento válido para la aplicación al modo angloamericano de la ley del caso. Núñez Borges v. Pauneto Rivera, 130 D.P.R. 749, 754-755 (1992), citando a Don Quijote Hotel v. Tribunal Superior, 100 D.P.R. _, a las págs. 29-30. Ello no quiere decir que, a fines de velar por el trámite ordenado y pronto de los litigios, así como por la estabilidad y certeza del derecho, un tribunal de primera instancia no deba resistirse a alterar sus pronunciamientos dentro de un mismo caso, excepto cuando se convenza de que los mismos son erróneos. Id. Esto es cuestión de sana práctica, sin embargo, y no regla inviolable. Id. También es regla del derecho común que un segundo juez no está obligado a mantener incólume la decisión de un primer juez de igual nivel dentro del *967 mismo caso. Id. Estas normas fueron reiteradas en Management Administration Services Corp. v. ELA, 152 D.P. R._(2000), res. el 29 de noviembre de 2000, 2000 J.T.S. 189, a la pág. 440; Banco Bilbao Vizcaya v. Municipio de Vega Baja, 154 D.P.R. _ (2001, res. el 27 de abril de 2001, 2001 J.T.S. 63, a la pág. 1188.
Por otro lado, el Tribunal Supremo ha adoptado como doctrina legal que cuando la ley del caso es errónea y puede causar una gran injusticia, puede emplearse una norma de derecho diferente. Secretario del Trabajo v. Tribunal Superior, 95 D.P.R. 136, 140 (1967); Noriega v. Gobernador, 130 D.P.R. 919, 931 (1992). Así, en Torres Cruz v. Municipio de San Juan, resolvió que un segundo juez de primera instancia puede cambiar la decisión errónea de un primer juez en el mismo caso. Id., a la pág. 222.
A base de este marco normativo, resolvemos confirmar las dos determinaciones judiciales recurridas.
ni
La parte peticionaria sostiene que las órdenes recurridas son contrarias a la sentencia parcial dictada el 27 de mayo de 2003 y a una orden de 27 de julio de 2004 que, sin vista ni comparecencia de la otra parte, concedió el remedio solicitado de que se diera por “renovado” el contrato, por la sola voluntad de la peticionaria. Alega que el ecto del Municipio de Guaynabo de notificarle que no renovaría el contrato violentó el acuerdo que está en vigor entre las partes porque, previa determinación judicial, no podía resolverse uniíateralmente por el Municipio, ante la falta de causa justificada para la terminación adelantada de la relación jurídica que existía entre ellos. A base de estas premisas, el único error levantado consiste en que el foro recurrido se negó “a imprimirle validez a la renovación del contrato conforme a las disposiciones contractuales aplicables”.
Al examinar los principios generales que constituyen la teoría general de la contratación y que son pertinentes al caso de autos, debemos destacar la autonomía de la voluntad como principio rector en la solución de la controversia principal que nos ocupa. No hay lugar a dudas de que los contratos se perfeccionan para cumplirse, es decir, el axioma “pacta sunt servanda” recoge la base fundamental de la teoría general de la contratación que rige en el país. Pero éste está sostenido por otros principios y fundamentos que conforman la normativa sobre la que incide dicha teoría general. Así, el principio de la autonomía de la voluntad va de la mano con el principio de la irrevocabilidad de los contratos, consecuencia principal del mencionado axioma fundamental.
Ahora bien, en el recurso que nos ocupa, no basta con hacer referencia a la obligatoriedad del contrato escrito entre las partes, independientemente de que una de ellas sea parte de la estructura gubernamental. Lo que importa es que el contenido del contrato, libremente pactado, tiene que cumplir su propósito o finalidad. Cualquier intervención en la búsqueda de la intención común que haga el intérprete, aunque se vista con la vestimenta judicial, debe procurar el mínimo efecto en la voluntad común que refleja el contrato. Con ello queremos puntualizar que, en aras de conservar el acuerdo, principio cardinal en la función interpretativa, no podemos sacrificar otro principio de superior jerarquía, porque se manifiesta en la esfera íntima de los contratantes y determina la formación misma del contrato, el de la autonomía de la voluntad.
El Tribunal Supremo de Puerto Rico ha tenido la oportunidad de tratar las controversias que presenta el recurso ante nos al interpretar el alcance y contenido del Artículo 1208 del Código Civil. La discusión doctrinal sobre el alcance del Artículo 1208 del Código Civil gira en tomo a lo que significan los conceptos “validez” y “cumplimiento” en el contexto de la teoría general del contrato, particularmente al amparo del principio de la autonomía de la voluntad. Hay consenso en cuanto al contenido y alcance del primer concepto: “validez”. Éste hace referencia directa a los elementos o requisitos esenciales que deben concurrir al momento de formarse el contrato; por tanto, no puede quedar al arbitrio de uno sólo de los contratantes. Eso implica que tanto el precio, como la cosa que sean requisitos esenciales del contrato, deben determinarse por ambos contratantes, no por uno sólo de ellos. Sin embargo, el término “cumplimiento”, en el contexto del Artículo 1208, se extiende a la fase ejecutiva del acuerdo, incluida su eventual resolución, ya sea por la consumación de rigor o por la *968 ocurrencia de hechos o actos que adelanten o retrasen la terminación del acuerdo. Por ello, si al formarse el contrato válidamente, ambas partes consienten a que una sola de ellas pueda retirarse de la relación jurídica de modo unilateral, con o sin justa causa, tal acuerdo está cobijado por la autonomía de la voluntad y, como tal, es válido y vinculante.
En pocas ocasiones, el Tribunal Supremo se ha enfrentado a esta controversia, pero la doctrina legal sentada y sostenida reiteradamente es constante, como hemos reseñado. El fundamento esencial de la norma jurisprudencial ha sido que, si ambas partes acuerdan la resolución unilateral por cualquiera de ellas, y aún por la voluntad de una sola, tal acuerdo obliga a ambos contratantes y no puede el afectado por la resolución atacar su validez por ser contraria a la ley o al orden público. Lo importante es que el acuerdo provea expresamente ese modo o manera de resolver la relación, aunque la facultad resolutoria resida en uno sólo de los contratantes.
Igual determinación hizo el Tribunal Supremo en Camacho Arroyo v. ELA, al concluir que este tipo de cláusula contractual en los contratos de servicios profesionales y consultivos no es contraria al interés público. Incluso, afirmó que “[l]a existencia de este tipo de cláusula y de cláusulas análogas entre el Estado y las personas o entidades en las cuales ambas partes se reservan el derecho a declarar resuelto el contrato que les brindan servicios profesionales, es enteramente justificable. Dichos acuerdos, lejos de ser contrarios al interés público, le brindan al Estado la flexibilidad que le permite terminar sus relaciones contractuales cuando no cuenta con el presupuesto necesario o cuando, por ser temporero o accidental el servicio profesional, el mismo se torne innecesario. Si bien es cierto que el Estado podría tener otras doctrinas contractuales a su disposición para desvincularse lícitamente de la persona con quien contrató servicios profesionales, no existe impedimento legal alguno para pactar la resolución bilateral expresa, siempre que medie una notificación adecuada. Distinto al foro de instancia, consideramos que este tipo de cláusula no es nocivo al orden público y que, por el contrario, a la luz del Art. 1207 del Código Civil, lo que en efecto sería detrimental al interés público es negarle al Estado la flexibilidad que le garantiza esta cláusula resolutoria expresa”. Camacho Arroyo v. ELA, 131 D.P.R. _, a la pág. 733.
Al aplicar la doctrina descrita a los hechos del caso de autos, nos enfrentamos a una variante interesante que reclama un análisis ponderado, con el fin de no omitir algún factor que nos obligue a prescindir de lo dicho y nos imponga el desvío de lo que parece ser una doctrina legal constante y reiterada. La cláusula de resolución unilateral a favor del Municipio no exige justa causa para su ejercicio; la cláusula de cancelación anticipada sí la exige. ¿Son contradictorias las dos cláusulas citadas? Al armonizarlas, para que cualquier terminación anticipada —llámese rescisión, resolución o cancelación, conceptos diversos que se mueven en su propio y particular contexto jurídico — , se ajuste al criterio de causa justificada, ¿se extiende ese elemento o requisito a la renovación del contrato? Resolvemos que no, como bien lo determinó el juez recurrido en la resolución y órdenes impugnadas por la peticionaria.
Nada en el contrato indica que el Municipio de Guaynabo quiso sujetar la negativa de renovar el contrato a la existencia de una justa causa. Lo que es evidente es que la justa causa está atada a la cancelación del contrato “antes de su expiración”. La disyuntiva “o” divide cada causa de manera diáfana y concreta. Al aplicar el principio de efecto mínimo en la interpretación del contrato, norma recogida en el Artículo 1241 del Código Civil, 31 L.P.R.A. see. 3479, podemos concluir que es ésta la interpretación menos invasora y lesiva de los intereses comunes de ambas partes. El acuerdo se extendió por los primeros cinco años, ya fuera como consecuencia de la litigación, como consecuencia de la determinación interlocutoria del tribunal recurrido o por anuencia de la parte demandada, pero, concluido ese plazo, no podemos imponer al Municipio de Guaynabo la obligación de renovar el contrato, si no demuestra justa causa para ello. Esa obligación no surge del contrato que suscribieron las partes. La disyuntiva “o” claramente separa dos supuestos en que la relación contractual podía concluirse prematuramente, por la no renovación o por la cancelación por causa justificada, antes de su expiración natural. No erró el tribunal recurrido al sostener igual conclusión y al negarse a conceder el remedio solicitado.
*969 Al evaluar el alcance de la “sentencia parcial' dictada el 27 de mayo de 2003 por la Hon. Sonia I. Vélez Colón, nos percatamos de que se limita a resolver la controversia base del pleito, si hubo o no incumplimiento del contrato por parte de la parte demandada y recurrida al resolver unilateralmente el contrato sin justa causa. De esta controversia dependen todas las demás del pleito: si procede, como remedio provisional, prohibirle al Municipio realizar ciertos actos contrarios a su obligación contractual; entre ellos, contratar con otras personas, y si procede la concesión de daños por el incumplimiento, si efectivamente hubo tal incumplimiento del Municipio. Nótese que su parte dispositiva se circunscribe a “la aplicabilidad de los conceptos de buena fe y justa causa al desistimiento unilateral del contrato vigente entre las partes en este caso cuando no existe incumplimiento de contrato”. En el caso de autos, parafraseando la opinión de Díaz, a la pág. 302, “no se dispuso [finalmente] de ninguna reclamación entre ninguna de las partes. Lo único que se resolvió fue [que el municipio no podía resolver unilateralmente el contrato sin justa causa]”. Y de esa conclusión dependían los demás remedios que quedaron pendientes de resolver. Siendo así, la “sentencia parcial' fue una resolución interlocutoria. Por tanto, siendo tal determinación una interlocutoria, por lo expresado en la parte II de esta resolución, estaba sujeta a ser reconsiderada en cualquier momento por el tribunal, antes de la conclusión final del pleito.
Concluimos, por lo dicho, que la "resolución" dictada el 27 de mayo de 2003 por el Tribunal de Primera Instancia no adquirió carácter “final' porque lo resuelto allí por el tribunal fue sólo una controversia del caso, aunque haya sido separable de las restantes; por tanto, el dictamen del foro de instancia fue de carácter interlocutorio. Camaleglo v. Dorado Wings, Inc., 118 D.P.R. _, a la pág. 26. Como tal, dicha resolución estaba sujeta a reconsideración en cualquier momento antes de dictarse la sentencia que adjudicara finalmente todos los planteamientos jurídicos del pleito. Rafael Hernández Colón, Derecho Procesal Civil, Lexis-Nexis, § 4107, pág. 283 (1997).
Además, la resolución invocada por Bus Shelters, con carácter de “ley del caso”, no gobernaba la cuestión relativa a la negativa del Municipio a renovar el contrato, porque esa cuestión no estaba planteada para su consideración en ese momento. Lo que tenía ante sí la juez era la terminación (o cancelación) anticipada unilateral del Municipio; consecuentemente, cualquier afirmación sobre la necesidad de justa causa para negarse a renovar fue un dictum o fue errónea, por lo que, bajo normas establecidas, el segundo juez que intervino en el litigio no estaba obligado por ella.
Por lo expresado, se expide el auto solicitado y se confirma la resolución y orden recurridas. En consecuencia, se deniega la moción en auxilio de jurisdicción presentada por la parte peticionaria el 12 y 20 de enero de 2004.
Notifíquese inmediatamente por fax, teléfono y vía ordinaria.
Lo acordó el Tribunal y certifica la Secretaria Interina del Tribunal.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones
ESCOLIOS 2005 DTA 35
1. La sentencia termina afirmando que “y en atención de que no existe razón para posponer dictar sentencia sobre las reclamaciones aquí comprendidas hasta la resolución total del pleito, emitimos el presente dictamen con la correlativa orden para su correspondiente registro.”
2. Así, en Hernández Torres v. Padilla Morales, 142 DPR 989, 998-98 (1997), el Tribunal Supremo reiteró que la aplicación de la Regla 69 “tiene como premisa que un convenio, oral o escrito, sea integrado, es decir, incluye todos los términos y condiciones que constituyen la verdadera y última intención de las partes. Basta que no se trate de la última *970 intención de las partes para que no sea aplicable la regla." Véase además a Ernesto Chiesa, Práctica Procesal Puertorriqueña, Vol. I, Evidencia, pág. 474, nota 10.
3. ¿Qué hubiera ocurrido si el Municipio demostraba la justa causa en comparecencia posterior e inmediata? ¿Por qué no terminó el pleito en ese momento?